**STATE of Missouri, Respondent,**

**v.**

**Peter RALLS, Appellant.**

**No. WD 50271.**

Missouri Court of Appeals,
Western District.

April 2, 1996.

Martin Warhurst, Kansas City, for Appellant.

Philip M. Koppe, Attorney General Office, Kansas City, for Respondent.

Before HANNA, P.J., FENNER, C.J., and ELLIS, J.

PER CURIAM.

The appellant, Peter A. Ralls, was convicted, by a jury, of second degree murder § 565.021, RSMo 1994, first degree robbery, § 569.020, RSMo 1994, and two counts of armed criminal action, § 571.015, RSMo 1994. He was sentenced as a prior, persistent, and class X offender to two terms of life imprisonment and two terms of twenty years imprisonment, all to be served consecutively. §§ 558.016, 558.019, RSMo 1994. Ralls contends that the trial court erred in allowing the prosecutor to comment upon his fifth amendment right to remain silent. He also asserts two evidentiary errors: the first one concerning hearsay testimony given by Detective Buente and the second claimed error in allowing rebuttal testimony of Detective McCune, which had not been disclosed to the defendant. Because the sufficiency of the evidence is not at issue, the facts are stated briefly and favorably to the verdict.

The police were called to the murder scene at about 6:25 A.M., September 24, 1992, where they found the victim, Michael Calaliere, slumped on the floor of the bathroom, which was located behind the counter of the store. He was pronounced dead at the scene. An autopsy revealed that he died of three gunshot wounds to the head. Two glass display cases containing jewelry and rings were lying on the floor. Much of the jewelry and several money bags were missing.

At approximately 6:00 A.M. on September 24, Tommie Winn entered P.J.'s Party Shop, located at 2522 E. 9th Street in Kansas City. He observed a bald, heavy-set man with big, brown eyes standing behind the counter. As he approached the counter, he noticed that the man had a revolver and was standing in the bathroom doorway. Winn identified this man as the defendant. He heard the man say, "Hand over your billfold. Give me the wallet." As Winn ran from the store, he heard three shots. Winn went across the street to Speedy's. As he left Speedy's, he saw the defendant walk out of P.J.'s down 9th street and go behind Humdinger's Restaurant.

At approximately 6:25 A.M., Michael Elder, who was living in the Chip Village apartment complex, observed a man matching the defendant's description coming from the direction of P.J.'s Party Shop and Humdinger's Restaurant. Elder testified that he had seen the same man walking towards those establishments approximately ten minutes before. At the time of the murder, the defendant was living in the Chip Village apartments with his girlfriend, Ida Whitley.

At trial, Winn identified the defendant as the man he saw that night. Winn had previously participated in a series of photographic line-ups and had tentatively identified a photograph of Ronald Thomas as someone who might have been the perpetrator.

Darryl Lockett testified that he was incarcerated at the Jackson County Jail with Ralls, in the spring of 1994, and that Ralls had asked him to eliminate Winn. Ralls told him that there might be $1500.00 in it for him. Ralls gave Lockett a note with Winn's name, an address, the hours Winn worked, and the notation, "$1500.00. He's telling." A handwriting expert confirmed that the note was written by Ralls.

In his first point, the defendant complains that the prosecuting attorney asked the jurors during voir dire, "Do you understand that the state cannot call the defendant to testify?" Defense counsel objected and moved for a mistrial. The defendant's objection was overruled and the request for a mistrial denied. Ralls argues that the prosecutor's question was an improper comment upon his decision not to testify and violated his right to remain silent and to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, Article I, §§ 10 and 19 of the Missouri Constitution, § 546.270, and Rule 27.05.

■■■ The general rule is that a prosecutor is not allowed to comment on a defendant's decision not to testify. *State v. Lindsey*, 578 S.W.2d 903, 904 (Mo. banc 1979). If the prosecutor makes a direct and certain reference to the failure of the defendant to testify, it constitutes reversible error. However, this prohibition is not absolute. *State v. Harris*, 636 S.W.2d 403, 405 (Mo.App. 1982).

■■ In this case, defense counsel, during voir dire examination, extensively questioned the panel concerning the defendant's right not to testify. He asked whether any members of the panel were expecting the defendant to testify in this trial, if they would like to hear him testify, and whether any of the panel members could think of a reason "why they wouldn't want to testify if they were on trial?" He further inquired, "Is there anybody who is going to have a problem if the defendant doesn't testify?"

During the assistant prosecutor's examination, following that of the defendant, he asked: "Okay. As he [defense counsel] correctly told you, the Defendant has a right not to testify. And you understand that. And do you understand that the State cannot call the Defendant to testify?" There was no response from venirepersons.

In *Harris*, 636 S.W.2d at 404, the prosecutor, during voir dire, told the panel, "I want you to know that under our system of justice, I can't call him to testify. I can't force him to testify." It was held that the remarks were general comments pertaining to the rights of the defendant and not a comment upon the defendant's failure to testify. *Id.* at 405. In *State v. Hamilton*, 871 S.W.2d 31 (Mo.App.1993), the prosecutor's comments were nearly identical to those made by the prosecutor in *Harris*. The prosecutor told the panel, "And I want you to know that under our system of justice I cannot call him to testify. I cannot force him to testify." *Id.* at 32. Once again, it was held that these comments were not improper or violative of the defendant's right not to testify. *Id.* at 34.

In *State v. Green*, 549 S.W.2d 644, 646–47 (Mo.App.1977), this court articulated the rule, saying:

> If counsel for the defendant, for stratagem or advantage, calls attention to the silence of his own client, that waiver entitles the prosecutor to answer on those terms. And counsel for the State may go further yet by way of such response and retaliation than would have been allowed him in the first instance.

In the instant case, defense counsel initiated discussion of the defendant's right not to testify. The prosecutor's remarks to the panel were not improper. The prosecution was entitled to assurance that the jury would not expect the state to call Ralls as a witness after defense counsel had raised the subject. *Hamilton*, 871 S.W.2d at 34.

The cases that Ralls cites in support of his proposition are easily distinguishable. In both *State v. Ward*, 702 S.W.2d 545 (Mo.App. 1985), and *State v. Cokes*, 682 S.W.2d 59 (Mo.App.1984), the defendants' attorneys asked during voir dire about their clients' failure to take the stand. The prosecution, in both instances, made unrelated comments at later stages in trial concerning the defendants' failure to testify. In *Cokes*, this court ruled that the references made by the defense during voir dire did not justify the prosecutor's comment during the closing argument. *Cokes*, 682 S.W.2d at 61–2. The same is true in *Ward*, in which this court held that the prosecution's remarks, made at a much later stage in the proceedings, could not be construed as retaliatory or responsive to remarks made by the defense during voir

dire. *Ward,* 702 S.W.2d at 548. Point denied.

In his second point, Ralls argues that the trial court erred in overruling defense counsel's objection to testimony given by Detective Read Buente. Detective Buente testified as a witness for the defense. During direct examination, Detective Buente was asked by the defense about a photographic line-up, in which Tommy Winn was shown an array of photographs, including one of a man named Ronald Thomas. After being shown the photograph, Winn told the detective that, "[f]rom what he could tell by the photograph, the physical shape of the face was similar to what he saw at the store but couldn't say for sure." Winn told Detective Buente that he thought that he could be sure if he saw Ronald Thomas in person. Defense counsel then asked the detective whether Winn had ever been given the opportunity to see a live or a videotaped line-up that included Ronald Thomas. Detective Buente admitted that he had not scheduled a line-up with Thomas for Winn's viewing.

During cross-examination, Detective Buente was asked, "Very briefly, Sir, why did you not show Mr. Thomas's photograph?" He answered that Thomas had been questioned in connection with the case and it was determined that he was not a suspect. Ralls argues that this was inadmissible hearsay and was a violation of his right of confrontation and cross-examination.

It is axiomatic that the trial court enjoys broad discretion in determining the permissible scope of cross-examination. *State v. Silvey,* 894 S.W.2d 662, 670 (Mo. banc 1995). Defense counsel opened the door for the prosecution's inquiry during direct examination. In *United States v. Durham,* 868 F.2d 1010 (8th Cir.), *cert. denied,* 493 U.S. 954, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989), the court was presented with a situation similar to that presented in the instant case. On direct examination, a defense witness was asked about a man who had approached him about the victim many times, including the day of the murder. *Id.* at 1012. During cross-examination, the government learned that someone had told the witness that the man was a landlord or a realtor. *Id.*

The defendant asserted that this was inadmissible hearsay. In rejecting the defendant's assertion, the Eighth Circuit explained:

The doctrine of opening the door allows a party to explore otherwise inadmissible evidence on cross-examination when the opposing party has made unfair prejudicial use of related evidence on direct examination. *United States v. Lum,* 466 F.Supp. 328, 334 (D.Del.) (citations omitted), *aff'd without opinion,* 605 F.2d 1198 (3rd Cir. 1979).

\*   \*   \*   \*   \*   \*

Here, Durham's direct examination elicited the fact that a man inquired of Clark's whereabouts. Without more, this could lead the jury to believe that this man murdered Clark. Therefore, it was necessary for the government to clear up this impression, if possible, and show the jury that the man was looking for Clark to lease or sell him property.

*Durham,* 868 F.2d at 1012.

In the instant case, the defense implied that Thomas was a viable suspect or perhaps the perpetrator of the crime and that the police had not investigated him as a suspect. The prosecution was entitled to rebut this inference during cross-examination.

Furthermore, the statement was not inadmissible hearsay as it was not offered as proof of facts but as an explanation of conduct. *See State v. Murray,* 744 S.W.2d 762, 773 (Mo. banc), *cert. denied,* 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988); *State v. Ross,* 857 S.W.2d 375, 378 (Mo.App.1993). The testimony given by Detective Buente during his cross-examination was used to explain why Winn was never exposed to Thomas in a live or videotaped line-up. "[S]tatements made by out-of-court declarant that explain subsequent police conduct are admissible, supplying relevant background and continuity." *State v. Dunn,* 817 S.W.2d 241, 243 (Mo. banc 1991), *cert. denied,* 503 U.S. 992, 112 S.Ct. 1689, 118 L.Ed.2d 403 (1992). Point denied.

Ralls next argues that the trial court erred in allowing the rebuttal testimony of

Detective McCune, whose statement was not disclosed to the defendant following his discovery request. Ralls claims that this violated Rule 25.03, as well as his right to a fair trial and due process of law. Detective McCune was called as a rebuttal witness by the state. He testified about an interview that had been conducted with Ida Whitley, Ralls' girlfriend, in which Whitley told him that on the morning of the murder Ralls had said, "he needed to get a pack of cigarettes...." Ralls claims that the State failed to disclose this statement to the defense and that this statement, coupled with testimony that when Ralls left Whitley he was traveling in an easterly direction (the direction of P.J.'s), was "absolutely devastating." The defendant objected and requested a mistrial. The trial court overruled the motion but advised the defendant that it would instruct the jury to disregard the statement. Defense counsel rejected such relief.

Initially, we note that it is apparent from the discussion that follows the defendant's motion for mistrial that the prosecution did not deliberately elicit the testimony given by Detective McCune. There was no effort on the part of the prosecution to magnify the statement. It appears to be both singular and isolated. The statement contained no specific reference to the crime itself.

■ "It is not uncommon for witnesses to unexpectedly volunteer inadmissible statements." *State v. Silas*, 885 S.W.2d 716, 720 (Mo.App.1994). When such an incident does occur, it rests within the sound discretion of the trial court to determine what action should be taken. *Id.* In order to evaluate the propriety of the trial court's action, this court, in *Silas*, provided the following guidelines:

> In determining whether the trial court abused its discretion, the court considers the following factors: 1) whether the statement was, in fact, voluntary and unresponsive, or whether the prosecution "deliberately attempted to elicit" the comments; 2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution; 3) whether the remarks were vague and indefinite, or

whether they made specific reference to crimes committed by the accused; 4) whether the court promptly sustained defense counsel's objection to the statement, and instructed the jury to disregard the volunteered statement; and 5) whether in view of the other evidence presented and the strength of the state's case, it appeared that the comment "played a decisive role in the determination of guilt."

*Id.* (citations omitted).

During the cross-examination of Ida Whitley, the prosecution questioned her about a statement that her sister Deborah had made to the police. Whitley was specifically asked whether she had told her sister that Ralls "was going up to P.J.'s to buy cigarettes" on the morning of the murder. The challenged remark made by Detective McCune could not, therefore, have played a decisive role in the determination of Ralls' guilt. It is apparent that the trial court did not abuse its discretion by not granting a mistrial. Point denied.

Judgment affirmed.