**STATE of Missouri, Respondent,**

v.

**Willie WRIGHT a/k/a Willie Davis, Appellant.**

**No. WD 38031.**

Missouri Court of Appeals, Western District.

Nov. 3, 1998.

---

Rosemary E. Percival, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ULRICH, P.J., and SMART and EDWIN H. SMITH, JJ.

ULRICH, Presiding Judge.

Willie Wright appeals from his conviction following jury trial for one count of arson in the first degree, section 569.040, RSMo 1994, and sentenced to ten years imprisonment. He claims that the trial court erred (1) in admitting the testimony of a police officer that a witness identified Mr. Wright from mugshots and in admitting the mugshots, and (2) in permitting the prosecutor to comment during voir dire regarding Mr. Wright's right not to testify. The judgment of conviction is affirmed.

Warren Williams, a self-employed house painter, met the appellant, Willie Wright, in late June 1985. Mr. Wright wanted to have his house painted, so he gave Mr. Williams his address and asked Mr. Williams to look at the house. When Mr. Williams attempted to find the house, he discovered that the address did not exist. In a telephone conversation a few days later, Mr. Williams informed Mr. Wright that he could not find the house. Mr. Wright then gave Mr. Williams a different address, which Mr. Williams unsuccessfully attempted to find. Mr. Williams again informed Mr. Wright he could not find the house, and Mr. Wright offered to drive Mr. Williams to it. Mr. Williams told Mr. Wright that he did not believe that Mr. Wright had a house for him to paint and refused to go with him.

A few days later, Mr. Wright approached Mr. Williams and asked him if he knew a woman named Linda. Mr. Williams denied knowing the woman. Mr. Wright then showed Mr. Williams a picture of Linda and explained that she was his wife and that he had seen Mr. Williams with her. Again, Mr. Williams denied knowing her, and the conversation ended.

At approximately 1:45 a.m. on July 4, 1985, Mr. Wright went to Mr. Williams's house looking for him. Mrs. Williams answered the door, and Mr. Wright asked to speak to her husband about purchasing some paint. Mrs. Williams told Mr. Wright to leave, and he did. For several days thereafter, Mr. Wright made several phone calls to the Williams' home asking for Mr. Williams.

At approximately 6:00 p.m. on July 10, 1985, Mr. Williams observed Mr. Wright sitting in a car a few blocks from his house. At about 8:45 p.m., Mr. Wright telephoned Mr. Williams and warned him, "You think I'm

jiving, but you better send me that woman." When Mr. Williams responded that he did not know her, Mr. Wright abruptly hung up. Concerned about the phone call, Mr. Williams called the police, who arrived a little after 9:00 p.m. and took Mr. Williams's statement.

At approximately 12:40 a.m. on July 11, 1985, Mr. Williams was still awake waiting for his wife to return home from work. He looked out of a bedroom window and saw Mr. Wright light an object and throw it through the window. The object exploded into flames igniting the drapes and walls of the house. Mr. Williams escaped from the house, and the fire department soon arrived. Fire investigators determined that the fire was started with a Molotov cocktail-a glass bottle with a wick and flammable liquid.

After the fire, Mr. Williams told police that Mr. Wright had set the fire. At the time, however, he only knew Mr. Wright by his first name, Willie. Later, Mr. Williams learned Mr. Wright's license plate number, and reported the information to the police. From the license plate number, the police determined that the car belonged to Willie Davis, which was an alias Mr. Wright used. The police then placed a photograph of Mr. Wright in a photo line-up that included photographs of other men and showed the line-up to Mr. Williams. Mr. Williams identified Mr. Wright as the person who had started the fire in his home.

Mr. Wright was charged with one count of first degree arson. Mr. Wright did not testify at the trial but called several witnesses, including his mother, who testified that he had arrived home at approximately 11:00 p.m. on the night of July 10, 1985, and did not leave the house the rest of the night. Mr. Wright was convicted of the charged offense, and the court sentenced him to ten years imprisonment. This appeal followed.

## I. Admission of Mugshots

■ In Mr. Wright's first point on appeal, he claims that the trial court erred in admitting the testimony of a police officer that Mr. Williams had identified Mr. Wright from police photographs prepared and used for identification of individuals ("mugshots")

and in admitting the mugshots. He argues that the evidence, coupled with testimony that police researched his license plate number through the police computer and learned that he had an alias, improperly communicated to the jury that he had a prior criminal history. While Mr. Wright objected to the introduction of the mugshots, he did not object to the terms "mugshots" or "alias" during the police officer's testimony. Review of the claimed errors regarding the admission of the police officer's testimony is, therefore, for plain error pursuant to Rule 30.20. Relief under the plain error standard is granted only when an alleged error so substantially affects a defendant's rights that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Tivis*, 933 S.W.2d 843, 846 (Mo.App. W.D.1996).

■ Testimony concerning the use of mugshots that discloses that a defendant has committed other crimes is improper. *Id.* at 846. The mere fact that a police department had on file the photograph of a defendant, however, does not lead to the inference that the defendant has committed prior crimes. *Id.* A defendant has the burden to show that the use of the term "mugshot" constitutes evidence of prior crimes. *State v. Harris*, 534 S.W.2d 516, 519 (Mo.App.1976). To make such a showing, a defendant has two alternatives: first, he could prove that all mugshots or photographs on file with the police department are photographs of people who had committed crimes, or second, he could prove that the average juror erroneously believes that persons whose photographs are on file with the police department have committed crimes. *Id.* at 519–520.

■ In this case, a police officer testified that Mr. Williams identified Mr. Wright through a photo lineup as the man who started the fire:

Q [PROSECUTOR]: After you determined who the person was who owned the car with that license number, what did you then do?

A [POLICE OFFICER]: I obtained a photograph of the party and four similar photographs to arrange a photospread line-up.

Q: I'm handing you what's previously been marked as State's Exhibits 8,9, 10, 11 and 12. I'll ask you to look through those and see if you can identify those photographs?

A: Yes.

Q: What are those?

A: These are the mugshots I assembled for the photospread.

Q: Now, sir, after you had assembled that photographic array, what did you do with it?

A: I contacted Mr. Williams and had him come to the office, and showed him the photospread and asked him if he could identify anybody in that group of pictures.

Q: Did he write anything on any of the photographs?

A: Yes, ma'am, he did.

Q: Which photograph is it that has his writing on the back of it?

A: It would be State's Exhibit 12.

The officer's single use of the term "mugshots" was made in the context of identification, not past criminal conduct. No testimony of prior crimes committed by Mr. Wright was presented in connection with the "mugshot" reference. Mr. Wright did not attempt to prove that either all mugshots on file with the police department are photographs of people who had committed crimes or that the average juror erroneously believes that persons whose photographs are on file with the police department have committed crimes. Likewise, a defendant's use of an alias does not constitute clear evidence associating the defendant with other crimes. *State v. Morrow*, 968 S.W.2d 100, 111 (Mo. banc 1998). No testimony was offered in connection with the "alias" reference regarding prior crimes committed by Mr. Wright. *State v. Brown*, 902 S.W.2d 278, 287 (Mo. banc 1995), *cert. denied*, 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). The trial court, therefore, did not plainly err in admitting the testimony of the police officer.

■ Mr. Wright also complains that the court erroneously admitted the mugshots. The introduction of a mugshot is examined in light of the facts and circumstances of the case. *Tivis*, 933 S.W.2d at 847. Police photographs, including mugshots, are considered neutral and do not, in and of themselves, constitute evidence of other crimes where inculpatory information is masked. *Id.* Mugshots are readily admissible into evidence where all identifying information is masked, where a defendant's identity is in issue, and where admission of the mugshot will help a jury to determine the accuracy of identification. *Id.* The admission of a mugshot constitutes prejudicial evidence of other crimes only where the mugshot or accompanying testimony discloses a defendant's prior arrests or convictions. *Id.*

■ The mugshots introduced in this case did not constitute evidence of other crimes. All identifying information was masked. The photographs showed only a headshot of all the people in the lineup, and all numbers and police department references were removed. Additionally, as discussed above, the police officer's testimony did not disclose any prior arrests or convictions of Mr. Wright. The trial court, therefore, did not err in admitting the mugshots. Point one is denied.

## II. Prosecutor's Comments During Voir Dire

In his second point on appeal, Mr. Wright claims that the trial court plainly erred in permitting the prosecutor to comment during voir dire regarding his right not to testify. During the State's voir dire the following conversation occurred between the prosecutor and the venire panel:

PROSECUTOR: Finally, the last question. Is there any reason at all that I haven't thought to ask that would make it difficult or impossible for you to sit as a juror in this case? Again, that's another question, if you'd like to discuss it in private with the attorneys and the Court after the general voir dire, we can take that up. Any reason at all that I haven't thought to ask that would prevent you-yes, sir, your name, please?

VENIREPERSON TROTT: Paul Trott. I have a problem if the defendant does not give testimony on his own behalf. I don't know you'd consider that -

PROSECUTOR: Okay. Yes. We need to talk about that a little bit. The constitution of the United States provides that the burden in a criminal case is on the State of Missouri. We have to prove our case. It also says that defendants don't have to give any evidence nor do they have to testify. And that is provided in both our state and federal constitutions and, of course, that does become part of the instructions that you would be receiving if they were appropriate in a criminal case. So if the defendant chose not to take the stand you would not be allowed to make any negative inferences from that. Are you saying you would not be able to follow that instruction?

VENIREPERSON TROTT: Yes.

PROSECUTOR: Thank you. Anyone else here? Yes, your name?

VENIREPERSON KNABE: Yes, I would.

PROSECUTOR: You also would—

VENIREPERSON KNABE: Yes.

PROSECUTOR: You'd be unable to follow that instruction of the Court?

VENIREPERSON KNABE: Yes.

PROSECUTOR: Thank you. Anyone else? I have no further questions. Thank you.

Mr. Wright contends that the prosecutor's comments infringed upon his constitutionally protected right to be free from self-incrimination.

■ It is generally improper for the prosecutor to comment on the defendant's right not to testify in a criminal case. *State v. Hamilton*, 871 S.W.2d 31, 32 (Mo.App. W.D.1993). The Fifth Amendment to the United States Constitution and Article I, section 19 of the Missouri Constitution provide that a person shall not be compelled to testify against himself in a criminal trial. *State v. Lindsey*, 578 S.W.2d 903, 904 (Mo. banc 1979); *State v. Spidle*, 967 S.W.2d 289, 292 (Mo.App. W.D.1998). These provisions prohibit both comments on the failure of the defendant to testify and comments which have the effect of compelling the defendant to testify. *Id.*

The effect of the remarks must have been either to coerce the defendant to testify, as has been said, "with a halter about his neck," or to induce him to remain silent, with knowledge that the jury had been challenged in the outset to observe whether or not he would go upon the stand under the goad of the prosecutor's statement.

*Lindsey*, 578 S.W.2d at 904 (citation omitted). The prohibition, however, is not absolute. *State v. Ralls*, 918 S.W.2d 936, 938 (Mo.App. W.D.1996). For example, where the defense counsel initiates discussion of the defendant's right not to testify, the prosecutor's subsequent remarks on the subject are not necessarily improper. *Ralls*, 918 S.W.2d at 938; *Hamilton*, 871 S.W.2d at 33–34; *State v. Harris*, 636 S.W.2d 403, 404 (Mo.App. E.D. 1982). "If counsel for the defendant, for stratagem or advantage, calls attention to the silence of his own client, that waiver entitles the prosecutor to answer on those terms." *State v. Green*, 549 S.W.2d 644, 646–647 (Mo. App. W.D.1977).

■ In this case, neither defense counsel nor the prosecutor initiated the discussion concerning Mr. Wright's right not to testify. Instead, a member of the venire panel raised the issue during the State's voir dire in response to the prosecutor's question, "Is there any reason at all that I haven't thought to ask that would make it difficult or impossible for you to sit as a juror in this case?" The question asked by the prosecutor was a legitimate question for voir dire. It was not asked to raise the issue of Mr. Wright's right not to testify or to remove from Mr. Wright's discretion whether to call attention to his right for strategy or advantage. The venireperson's question raising the subject of Mr. Wright's right not to testify could not reasonably have been anticipated. After the subject was raised by the venireperson, however, the prosecutor's response of general comments asserting the rights of every defendant not to testify was not improper. By responding to the venireperson's statement, the prosecutor did not call undue attention to the defendant's right not to testify or challenge the defendant to testify. The venireperson's remark necessitated a response. The prosecutor's response was a general

comment about the rights of defendants to testify. The prosecutor's remarks were, therefore, not improper comments on Mr. Wright's right not to testify, and the trial court did not plainly err in permitting the remarks. Point two is denied.

The judgment of convictions is affirmed.

All concur