

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | WD77159 |
| | ) | |
| AMANDA N. BAZELL, | ) | Opinion filed: July 21, 2015 |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF CASS COUNTY, MISSOURI**
**THE HONORABLE R. MICHAEL WAGNER, JUDGE**

Before Division Two:  Thomas H. Newton, Presiding Judge,
Victor C. Howard, Judge and Mark D. Pfeiffer, Judge

Amanda Bazell appeals her convictions and sentences following a jury trial for burglary in the first degree, section 569.160, RSMo 2000, two counts of stealing firearms, one count of stealing over $500, and one count of stealing under $500, section 570.030, RSMo Cum. Supp. 2013.  She contends that the trial court abused its discretion in denying her request for a mistrial after a detective testified that he compiled a photo lineup from jail photos.  Bazell also argues that the trial court plainly erred in accepting the jury's verdict for two counts of stealing firearms and in sentencing her for both counts in violation of her right to be free from double jeopardy.  Bazell's convictions and sentences for first-degree burglary, one count stealing firearms, stealing

property over $500, and stealing property under $500 are affirmed.  Her conviction and sentence for one count of stealing firearms is reversed.

## Background

Bazell does not challenge the sufficiency of the evidence.  The evidence, viewed in the light most favorable to the verdict, established that on Sunday morning, March 10, 2013, Bazell broke into the home of Phillip and Nancy Connaughton in Garden City, after the Connaughtons had left for church, and stole a Berretta Elite .40 caliber pistol, a Ruger .22 caliber rifle, and a laptop, jewelry box, suitcase, and two pairs of tennis shoes.  Later in the morning, Bazell broke into the home of Mark and Veronica Stout in Pleasant Hill.  Mrs. Stout was at church at the time, and Mr. Stout was sleeping in his bedroom.  Mr. Stout woke when he heard his back door creak open and confronted Bazell in the dining room.  Bazell said she was looking for Ashley to drop something off, and Mr. Stout said she had the wrong house.  Mr. Stout continued to question Bazell as she headed back to her car.  Mr. Stout got the license plate number on the car and called the police after Bazell left.  Bazell stole three rings with a value of $8000 from the Stouts' home.

Bazell was charged as a prior and persistent offender with two counts of first-degree burglary, three counts of felony stealing, and one count of misdemeanor stealing.  The jury returned guilty verdicts for one count of first-degree burglary and all of the stealing counts.  It was deadlocked on the remaining burglary count for the burglary of the Connaughton home, and the trial court declared a mistrial as to that count.  The State subsequently dismissed that count nolle prosequi.  The trial court sentenced Bazell to concurrent terms of twelve years imprisonment for the burglary, stealing firearms, and stealing over $500 convictions and one year in the county jail for the stealing under $500 conviction.  This appeal by Bazell followed.

2

**Photo Lineup**

In her first point on appeal, Bazell claims that the trial court abused its discretion in denying her request for mistrial after a detective testified that he compiled a photo lineup from jail photos. She argues that the testimony constituted evidence of other crimes and violated her right to be tried only for the offense charged and destroyed the presumption of innocence.

A mistrial is a drastic remedy reserved for the most extraordinary circumstances, and the decision whether to grant one is left to the trial court's sound discretion. *State v. Shaffer*, 439 S.W.3d 796, 801 (Mo. App. W.D. 2014). "A mistrial should only be granted when the prejudice to the defendant cannot be removed in any other way." *Id.*

Generally, evidence of the commission of separate and distinct crimes is not admissible unless it has some legitimate tendency to directly establish the defendant's guilt of the charged crime. *State v. McFadden*, 369 S.W.3d 727, 741 (Mo. banc 2012). Evidence of other crimes, when not properly related to the cause on trial, violates a defendant's right to be tried only for the offense charged. *State v. Vorhees*, 248 S.W.3d 585, 587 (Mo. banc 2008). But vague or speculative references to the defendant's involvement in other crimes do not violate this right. *State v. Taborn*, 412 S.W.3d 466, 473 (Mo. App. W.D. 2013). To violate the rule against the admission of evidence of other crimes, the evidence must show that the defendant committed, was accused of, was convicted of, or was definitely associated with the other crimes or misconduct. *Id.* Vague references are not clear evidence associating a defendant with other crimes. *Id.* The defendant has the burden to show that the challenged testimony constituted evidence of other crimes. *State v. Clark*, 112 S.W.3d 95, 100 (Mo. App. W.D. 2003). Testimony concerning the use of a mug shot that discloses information that a defendant has committed other crimes is improper. *State v. Wright*, 978 S.W.2d 495, 498 (Mo. App. W.D.

3

1998)(it is the defendant's burden to show that the use of the term "mugshot" constituted evidence of prior crimes).

Regarding a photo lineup shown to a witness in this case, a detective testified as follows:

Q: And so you prepared a photo lineup in this case; right?

A: That's correct.

Q: And you said it included Amanda Bazell?

A: Yes, it did.

Q: How do you typically prepare a photo lineup? Where do you draw photos from?

A: I draw them either from jail photographs or through Department of Revenue driver's license photos.

Q: And in this case you pulled them from the Department of Revenue; isn't that right?

A: That's true.

Q: And how many photos did you pull?

A: Six.

Q: You mentioned that in a photo lineup you want the individuals to have similar features?

A: Yes, they did.

Q: Is there any sort of program that does that for you?

A: I just essentially go through our jail system and locate the number of individuals that have similar characteristics to the one that I am looking for.

Q: But from the Department of Revenue, you said these were pulled?

A: These were pulled from the Department of Revenue. The initial—the initial information afforded to the photographs was drawn from previous jail photos.

Soon thereafter, defense counsel requested a mistrial arguing that the detective testified that the photo shown of the defendant was a jail photo, which suggested other crimes. The trial court denied the request. The prosecutor then offered the photo lineup into evidence and continued to question the detective about it:

Q: [I]s that a fair and accurate depiction of the lineup that you showed to her? Is this the actual copy of it?

A: Yes, that's it.

Q: And is one of these photos Amanda Bazell?

A: Yes, it is.

Q: And if you flip through here, which photo is the photo of her?

A: Photo Number 3.

Q: I am looking at here what is marked as Photo Number 1; is that right?

A: Yes.

Q: Here we have Photo Number 2.

A: Yes.

Q: Photo Number 3 and that is the photo that you pulled of Amanda Bazell.

A: Yes, it is.

Q: Now, did you pull that from the Department of Revenue records?

A: Yes, I did.

Q: And all of these other photos, did you pull those from the Department of Revenue records?

A: Yes, I did.

Bazell failed to show that the detective's testimony was evidence of other crimes. The detective repeatedly explained that he obtained Bazell's and all of the photos in the photo lineup

from the Department of Revenue records. While he explained that he used the jail photo system to find other people with similar characteristics to Bazell to fill out the rest of the lineup, his testimony did not establish that Bazell's photo was in the jail system or that he used the jail system to find her photo. The detective's testimony did not show that Bazell committed, was accused of, was convicted of, or was definitely associated with other crimes or misconduct. The vague references to the jail photo system did not clearly associate Bazell with other crimes. The trial court did not err in denying Bazell's request for a mistrial. Point denied.

## Double Jeopardy

In her next point on appeal, Bazell contends that the trial court plainly erred in accepting the jury's verdict for two counts of stealing firearms and in sentencing her for both counts in violation of her right to be free from double jeopardy. She contends that under the charging statute, section 570.030.3, stealing two firearms in the course of one burglary constitutes a single offense.

Bazell concedes that she failed to raise her double jeopardy claim in the trial court and requests plain error review. Generally, a constitutional issue must be raised at the earliest opportunity to be preserved for appellate review. *State v. Liberty*, 370 S.W.3d 537, 546 (Mo. banc 2012). However, "the right to be free from double jeopardy is a constitutional right that goes 'to the very power of the State to bring the defendant into court to answer the charge brought against him.'" *Id.* (quoting *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), *overruled on other grounds by Bordenkircher v. Hayes*, 434 U.S. 357 (1978)). Thus, an appellate court reviews for plain error when it can determine from the face of the record that the trial court had no power to enter the conviction. *Id.*

"The double jeopardy clause protects a defendant both from successive prosecution for the same offense and from multiple punishments for the same offense." *State v. Roggenbuck*, 387 S.W.3d 376, 381 (Mo. banc 2012). Bazell argues that her two convictions for stealing two different firearms from the same house constitute multiple punishments for one offense. Double jeopardy analysis regarding multiple punishments is limited to determining whether cumulative punishments were intended by the legislature. *Id.*; *Liberty*, 370 S.W.3d at 546-47. "To determine whether the legislature intended multiple punishments, a court looks first to the 'unit of prosecution' allowed by the statutes under which the defendant was charged." *Liberty*, 370 S.W.3d at 547 (internal quotes and citation omitted). If the charging statute does not unambiguously express the permissible unit of prosecution, the rule of lenity resolves doubts about the intended unit in favor of the defendant. *Id.* "But the rule of lenity applies to interpretation of statutes only if, after seizing everything from which aid can be derived, the court can make no more than a guess as to what the legislature intended." *Id.* (internal quotes and citation omitted).

A person commits the crime of stealing if "she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." § 570.030.1. Stealing is a class C felony if "[t]he property appropriated consists of…[a]ny firearms." § 570.030.3(3)(d). The State concedes that the statutory language "any firearms" is itself ambiguous as to the allowable unit of prosecution because it could reasonably be interpreted to permit either a single prosecution or multiple prosecutions for a single incidence of stealing multiple firearms. *See Liberty*, 370 S.W.3d at 548 (prohibition in section 573.037, RSMo Cum. Supp. 2007, against possession of "any obscene material" is ambiguous because it reasonably could be interpreted to permit either a single

prosecution or multiple prosecutions for a single incidence of possession of eight still photographs of child pornography); *State v. Baker*, 850 S.W.2d 944 (Mo. App. E.D. 1993)(statutory prohibition against possession of "any" weapon in correctional facility is ambiguous as to allowable unit of prosecution). "But before finally deciding that a statute is ambiguous, a court is permitted to apply rules of statutory construction, for the rule of lenity 'in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read.'" *Liberty*, 370 S.W.3d at 549 (quoting *Bell v. United States*, 349 U.S. 81, 83 (1955)). Thus, a court "will use relevant rules of construction to determine whether the otherwise ambiguous term 'any' can be clarified as to whether, in context, the legislature did or did not intend to allow multiple punishments." *Id.*

In determining legislative intent, it is fundamental that a section of a statute should not be read in isolation from the context of the whole act." *State v. Salter*, 250 S.W.3d 705, 711 (Mo. banc 2008); *State v. Haskins*, 950 S.W.2d 613, 615 (Mo. App. S.D. 1997). "A statute's provisions must be construed and considered together and, if possible, all provisions must be harmonized and every clause given some meaning." *State v. Moore*, 952 S.W.2d 812, 813 (Mo. App. E.D. 1997). "Related clauses are considered when construing a particular portion of a statute." *State v. Sledd*, 949 S.W.2d 643, 646 (Mo. App. W.D. 1997). "It is presumed that the legislature intended that every word, clause, sentence, and provision of a statute have effect." *State v. Downing*, 359 S.W.3d 69, 71 (Mo. App. W.D. 2011)(internal quotes and citation omitted). Conversely, it will be presumed that the legislature did not insert idle verbiage or superfluous language in a statute." *Id.* (internal quote and citation omitted).

8

The State argues that section 570.030.3 shows a legislative intent to more harshly punish those who put the public in jeopardy by stealing firearms, which is more fully achieved by allowing the State to separately prosecute the theft of each individual firearm. The State is correct that subsection 3 designates the theft of specific property, including firearms, for enhancement from a class A misdemeanor to a class C felony. However, increasing the penalty for theft of firearms does not necessarily show that the legislature intended multiple punishments for the theft of each firearm.

More importantly, the State ignores subsection 6 of section 570.030, which further elaborates on the unit of prosecution for the theft of specific property listed in subsection 3 and which must be considered in construing subsection 3. Section 570.030.6 provides, "The theft of any item of property or services pursuant to subsection 3 of this section which exceeds five hundred dollars may be considered a separate felony and may be charged in separate counts." This provision shows the legislature's clear intent for punishment for the theft of each firearm with a value over five hundred dollars. Specifically designating the theft of property listed in subsection 3 valued at over $500 to be considered separate felonies and not so designating the theft of property valued at $500 and less reflects a legislative intent that theft of the latter are not separate felonies and may not be charged in separate counts. Had the legislature desired separate punishment for the theft of each firearm under that value, it could have expressly provided similar language as that in subsection 6 or utilized the singular "a" instead of "any" or the singular formulation of "firearm."[1] It, however, did not do so.

---

[1] Despite the use of the term "any" in statute, where evidence distinguishes offenses by showing that the crimes were separated by time or location or by showing different types of offenses or items, multiple convictions may be permitted. *See State v. Roggenbuck*, 387 S.W.3d 376 (Mo. banc 2012)(where, in contrast to the facts in *Liberty*, the evidence showed that defendant acquired possession of five different photos at five different points of time, each act of acquisition and possession was temporally distinguishable and constituted separate act in violation of section 573.037); *State v. Williams*, 542 S.W.2d 3 (Mo. App. 1976)(multiple drug convictions under statute prohibiting possession of "any controlled or counterfeit substance" were permissible because defendant possessed two different

9

Subsection 6 clarifies the otherwise ambiguous phrase "any firearms." Read as a whole, section 570.030 shows a legislative intent to not allow multiple punishments for a single incidence of theft of multiple firearms not valued over $500. The statute is not ambiguous as to the unit of prosecution in this case. The State did not allege a value of the firearms in the charging document and did not prove a value at trial. Convictions on Counts 3 and 4 for stealing firearms violated Bazell's constitutional right to be free from double jeopardy. The trial court plainly erred in entering judgment on both counts, and manifest injustice will result if both convictions are allowed to stand. Accordingly, Bazell's conviction under Count 4 for theft of firearms is reversed.

Bazell's convictions and sentences for first-degree burglary, one count stealing firearms, stealing property over $500, and stealing property under $500 are affirmed. Her conviction and sentence for one count of stealing firearms is reversed.

_____
VICTOR C. HOWARD, JUDGE

All concur.

---

types of drugs—heroin and marijuana—which required the State to prove different elements for the distinct drugs underlying the charges).