STATE of Missouri, Respondent,

v.

David Delaine LIBERTY, Appellant.

No. SC 91821.

Supreme Court of Missouri,
En Banc.

May 29, 2012.

Frederick J. Ernst, Public Defender's Office, Kansas City, for Liberty.

Daniel N. McPherson, Attorney General's Office, Jefferson City, for State.

LAURA DENVIR STITH, Judge.

David Liberty appeals his conviction of one felony count of first-degree promoting child pornography and eight felony counts of first-degree possession of child pornography. Mr. Liberty alleges that the evidence the State presented was insufficient to convict him of promoting child pornography because the Internet post on which it was based failed to describe "sexual conduct" as required by section 573.025.1 RSMo 2000. He further contends that the evidence was insufficient to convict him of eight counts of possession of child pornography because the images giving rise to six of the charges also do not depict "sexual conduct" as required by section 573.037 RSMo Supp.2007 and, even if they do, the imposition of eight separate sentences for one instance of possession violated his constitutional protections against double jeopardy, as section 573.037 does not unambiguously permit separate prosecutions for each image a defendant simultaneously possessed.

This Court affirms Mr. Liberty's conviction for promoting child pornography because, as explained below, the State's evidence was sufficient to support the verdict that the Internet post on which the charge was based included material proscribed by section 573.025.1.

As to Mr. Liberty's eight convictions for possession of child pornography, this Court rejects Mr. Liberty's argument that the images underlying those convictions do not depict "sexual conduct" as required by section 573.037. But seven of the convictions nonetheless must be reversed. Section 573.037 sets out the crime of "possession" of "any obscene material." This language leaves it unclear whether a defendant's simultaneous possession of eight separate images of child pornography constitutes eight separate crimes of possession or a single crime of possession. As rules of statutory construction either are unhelpful or militate in favor of interpreting the language to permit a single conviction in these circumstances, the rule of lenity dictates that this Court interpret the statute to permit only a single conviction on the evidence adduced below that Mr. Liberty possessed eight images of child pornography on the day the images were seized.

This holding, however, does not preclude the State from retrying Mr. Liberty on the seven charges for which his convictions are reversed. Under the federal and Missouri constitutions, if a conviction is reversed as a result of trial error rather than insufficient evidence, double jeopardy principles do not bar the defendant's retrial. Here, Mr. Liberty's claim properly is characterized as trial error as it resulted from a misreading of the statute to permit multiple prosecutions based on possession of multiple images at a single time; therefore, double jeopardy principles would not bar retrial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2007, a volunteer for an anti-pedophile activist group, the Wikisposure Project, began monitoring a website frequented by men who are sexually attracted to young boys ("the pedophile website"). After observing repeated posts by an individual with the username "DDLIBNKC," the volunteer began saving screen shots of posts containing identifying information about the user and his sexual contact with children.[1] Included in these posts were statements by "DDLIBNKC" that he was attracted to young boys, that he had taken photographs and videos of young boys, and that he had saved certain "treasures" from young boys that he "would remember for the rest of his life." The posts also described and contained information about a separate website on which pedophiles shared photographs of young boys. The volunteer followed a link to that website and discover that "DDLIBNKC" also had an account there with pictures corresponding to the information contained in the postings made to the pedophile website.

The screen shots associated with these posts eventually were turned over to law enforcement officers, who commenced their own investigation. These investigators acquired several more screen shots of posts with identifying characteristics of "DDLIBNKC" that contained descriptions of his contacts with children. Authorities subsequently linked these posts to Mr. Liberty and obtained a search warrant for the house north of Kansas City in which Mr. Liberty lived. During the search, officers seized several items, including a note with the name of the pedophile website written on it, numerous photographs of a young boy and items appearing to belong to a child that were referenced in the online posts made by "DDLIBNKC." Investigators also discovered a digital cam-

---

1. As Mr. Liberty does not contest on appeal that he was the author of posts made by "DDLIBNKC," the evidence linking him to the posts is not repeated here.

corder in Mr. Liberty's bedroom, literature for an HP Pavilion DV9000 laptop computer and a box with the name "Olympus."

The laptop and an Olympus camera eventually were seized and taken to a computer forensic's laboratory for examination.[2] That examination revealed that the computer had been used hundreds of times to access pedophile websites with the username "DDLIBNKC." Investigators also discovered that the computer had been used to visit the Wikisposure Project website, which included an accessed page containing claims that "DDLIBNKC" was a pedophile. The same day the Wikisposure site was visited, the computer also was used to view a YouTube clip that referred to "DDLIBNKC." Also on that day, a program advertised as one that would clean deleted files from computers was downloaded and executed on the computer. Despite the use of this program, however, after the computer was seized, investigators found several apparently pornographic images of children on the computer.

Accordingly, the State charged Mr. Liberty with one class B felony count of promoting child pornography in the first degree and nine class C felony counts of possession of child pornography.[3] Mr. Liberty waived jury trial, and the court found him guilty of all charges, save one count of possession of child pornography.[4] He was sentenced to twelve years imprisonment for promoting child pornography and three years imprisonment for each of his eight convictions for possession of child pornography, all sentences to be served consecutively. This appeal follows.

## II. SUFFICIENCY OF THE EVIDENCE CLAIMS

Mr. Liberty argues that there was insufficient evidence to support his conviction for the class B felony of promoting child pornography because the Internet post on which the conviction was based does not describe "sexual conduct" as required by section 573.025.1. Likewise, he contends that there was insufficient evidence to convict him of six of his convictions for the class C felony of possession of child pornography because, he asserts, the images underlying those convictions do not depict "sexual conduct" as required by section 573.037.

### A. Standard of Review

"In reviewing the sufficiency of the evidence in a court-tried criminal case, the appellate court's role is limited to a determination of whether the state presented sufficient evidence from which a trier of fact reasonably could have found the defendant guilty." *State v. Vandevere*, 175 S.W.3d 107, 108 (Mo. banc 2005). "This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder 'could have found the essential elements of the crime

2. The laptop was seized based on a subsequent search of Mr. Liberty's vehicle. The camera was recovered after a pawn shop employee reported to police that someone recently had pawned an Olympus camera. The employee identified Mr. Liberty from a photographic array as the person who had pawned it.

3. As detailed below, an Internet post distributed by Mr. Liberty to the pedophile website

formed the basis of the charge for promoting child pornography.

4. The court found Mr. Liberty not guilty of possession of child pornography as charged in count 6, presumably based on his attorney's argument that the image underlying that charge did not depict "sexual conduct" as required by statute because there was no contact shown between the subjects in the images.

beyond a reasonable doubt.'" *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011), *quoting State v. Bateman*, 318 S.W.3d 681, 687 (Mo. banc 2010). "When reviewing a challenge to the sufficiency of the evidence, this Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence." *State v. Crawford*, 68 S.W.3d 406, 407 (Mo. banc 2002). "All evidence and inferences to the contrary are disregarded." *Id.* at 408.

*B. Conviction for Promoting Child Pornography*

■ Mr. Liberty's conviction for promoting child pornography stemmed from his post to the pedophile website describing a 5–year–old male child's physical contact with Mr. Liberty's genitals and Mr. Liberty's own physical contact with the genitals of one 7–year–old male child and with the genitals and buttocks of another. The post stated: [5]

> Oh what a wonderful way for my summer to begin AT THE LAKE[.]
>
> Lucky me 5 [year] old ["D"] from across the street begged to tag along. Couldn['t] never talk him into HUMPING MY BACK by climbing on top of me as I was being pulled behind the boat on a Tiki Warrior[.] BUT I did get a solid hour of LAP DANCES out of him when we switched ove[r] to [an] innertube[.]
>
> BUT THE TWINS 7 year old ["S"] and ["T"] [I see maybe once every 3 weeks.] [6] Long legged boys tall and skinny for [their] ages ARE QUITE

TIMID lil things[.] [W]ouldn['t] say sissys rather they are MOMMAS BABYS [at least she babys them Way to much never letting them explore] [7] although ["S"] does have alot of girly in him[.] ANYWAYS after much begging from [their] Dad driv[ing] the boat they finally took turns HUMPING MY BACK[.] [M]e hanging on for dear life on the Tiki Warrior and them [their] long arms and legs wrapped tight around mine as we went flying across the lake[.]

Now ["S"] never even took swim less[ons] TO[O] AFRAID[.] [S]o he was wearing [oh so damn cute he looked] [8] one of those little half wet-suit swimsuits[.] [T]hey came down to his knees/elbows and from the waist up the chest front/back they have sewn in lifevest so I only felt his lil boner only now and then[.]

BUT ["T"] Christ [apparently] nobody noticed he had no undies on underneath [at least till after we had left] [9] [to] go boating/swimming in navy blue NYLON SOCCER SHORTS[.] Not only could I feel him grow EACH and EVERY time he was hanging on for dear life[,] I also got to sneak LOTS OF PEEKS when he sat just right[.]

Damn at one point when we was climbing back on the boat[,] Me my hands on ["T's"] little firm butt pushing him up[,] HIS dad pulling by his arms[,] HIS DAD busted out laughing[;] when I asked wouldn['t] say why[.] Quickly I realized why as I climbed up the ladder same time ["T"] turned to face me[.] FOR AS LITTLE AS HIS BOY PACK

---

5. Spelling, punctuation and spacing have been altered from the original post to improve readability. Words in all capital lettering appear as reflected in the original post.

6. This bracketed statement appears in original.

7. This bracketed statement appears in original.

8. This bracketed statement appears in original.

9. This bracketed statement appears in original.

may be it was very clear for all to see IT WAS AS HARD AS HARD COULD BE after humping my back for a good solid 20 minutes[.]

This posting formed the basis of Mr. Liberty's conviction for promoting child pornography under section 573.025.1, which provides:

> A person commits the crime of promoting child pornography in the first degree if, knowing of its content and character, such person possesses with the intent to promote or promotes obscene material that has a child as one of its participants or portrays what appears to be a child as a participant or observer of *sexual conduct*.[10]

*§ 573.025.1* (emphasis added).[11]

Mr. Liberty argues that there was insufficient evidence to convict him of promoting child pornography because the post set forth above did not describe "sexual conduct" but rather merely discussed "riding with some children in an inner-tube and another inflatable towable device pulled by a boat on a lake." Viewed in the light most favorable to the verdict, however, the text of the post and the inferences derived from it clearly demonstrate that the posting includes descriptions of "sexual conduct."

"Sexual conduct" is defined by section 573.010(17) which states that such conduct is:

> actual or simulated, normal or perverted acts of human masturbation; deviate sexual intercourse; sexual intercourse; or *physical contact with a person's clothed or unclothed genitals, pubic area, buttocks,* or the breast of a female *in an act of apparent sexual stimulation or gratification* or any sadomasochistic abuse or acts including animals or any latent objects in an act of apparent sexual stimulation or gratification.

*§ 573.010(17)* (emphases added).

Inasmuch as Mr. Liberty's post included descriptions of a 5–year–old engaged in "lap dances" with him, of two 7–year–olds "humping his back," of feeling "S's" "lil boner," and of touching "T's" "little firm butt," it described "physical contact with a person's clothed or unclothed genitals, pubic area, [or] buttocks." *See id.* That these exploits constituted "act[s] of apparent sexual stimulation or gratification," *id.*, is evident or reasonably can be inferred from the sexual connotations associated with the terms "lap dance," "hump," "boner" and other descriptive language used. Moreover, the post was placed on a website that provides a discussion forum for men sexually attracted to young boys, and the screen capture of the posting, as presented in State's Exhibit 1, showed that the post was placed on the website's forum called "Little BoyLover Chat" and was titled "Getting humped by 7 [year] old twins/Lap dances from a 5 [year] old, Mer-

---

10. "Promote" is defined by section 573.010(15) as "to manufacture, issue, sell, provide, mail, deliver, transfer, transmute, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do the same, by any means including a computer." Certainly posting child pornography to the Internet would constitute "promoting" it, and Mr. Liberty does not assert otherwise. All references to section 573.010 are to RSMo Supp.2007.

11. Material is "obscene" if, taken as a whole:

(a) Applying contemporary community standards, its predominant appeal is to prurient interest in sex; and

(b) The average person, applying contemporary community standards, would find the material depicts or describes sexual conduct in a patently offensive way; and

(c) A reasonable person would find the material lacks serious literary, artistic, political or scientific value.

*§ 583.010(12).*

cy sakes I AM SPENT [it is] how I spent my lazy afternoon."

Viewed in the light most favorable to the verdict, the clear inference from the text of the post and its context is that Mr. Liberty was describing physical contact with the children that, at minimum, represented apparent acts of sexual stimulation or gratification. *See State v. Oliver*, 293 S.W.3d 437, 445 (Mo. banc 2009) (holding "two photographs of a boy bending over with his unclothed buttocks toward the camera and separating his buttocks with his hands depict[ed] sexual conduct," as the contact was "an act of apparent sexual simulation, given the nature of this position, the fact that this position [was] the primary object of the photograph, and the circumstances under which [the] photographs were taken"). As such, the State presented sufficient evidence from which the trier of fact reasonably could have found Mr. Liberty guilty of promoting child pornography and his conviction on that charge is affirmed.

### C. The Images Underlying the Convictions for Possession of Child Pornography Depict Sexual Conduct

■ Mr. Liberty similarly alleges that the evidence was insufficient to support his convictions for possession of child pornography as charged in counts 2, 4, 5, 7, 8 and 9, because, he argues, the images forming the basis of those counts do not depict "sexual conduct" as proscribed by section 573.037. At the time of Mr. Liberty's conviction that statute provided:

> A person commits the crime of possession of child pornography if, knowing of its content and character, such person possesses any obscene material that has a child as one of its participants or portrays what appears to be a child as an observer or participant of *sexual conduct.*

§ 573.037.1 (emphasis added). Viewed in the light most favorable to the verdict, the images underlying each of Mr. Liberty's possession convictions depicts "sexual conduct" as that phrase is defined in section 573.010(17).

The images forming the basis of the contested convictions can be summarized as follows. The photograph supporting count 2 depicts a young boy lying unclothed on his stomach with his hands and feet bound together. The images underlying counts 4, 5, 7 and 8 show naked male adolescents engaged in physical contact with the genitals, pubic area or buttocks of other young boys. Count 9 was based on an image depicting a young boy whose hand appears near his semi-erect penis in a position suggesting that the boy's hand recently had been in contact with the penis.

As noted above, "sexual conduct" as defined in section 573.010(17) includes "actual or simulated, normal or perverted acts of human masturbation; ... or physical contact with a person's clothed or unclothed genitals, pubic area, [or] buttocks, ... in an act of apparent sexual stimulation or gratification or any sadomasochistic abuse ... in an act of apparent sexual stimulation or gratification." Insofar as the images underlying counts 4, 5, 7 and 8 depict young males in "physical contact with a person's clothed or unclothed genitals, pubic area, [or] buttocks," *see id.*, they fall within the statutory definition of "sexual conduct." Likewise, by portraying a naked young boy whose hands and feet are bound together, the photograph underlying count 2 depicts "sexual conduct" in the form of "sadomasochistic abuse." *See id.* Finally, viewed in the light most favorable to the verdict, the reasonable inference to be drawn from the image underlying count 9 is that the young boy depicted therein was engaged in "sexual conduct" in the

form of a "simulated ... act[ ] of human masturbation." *See id.*

As this Court said in *Oliver*, it is evident or reasonably can be inferred that the images on which counts 2, 4, 5, 7 and 8 were based meet the further requirement of section 573.010(17) that the acts portrayed therein be "act[s] of apparent sexual stimulation or gratification," *id.*, "given the nature of [the depicted positions], the fact that the position[s are] the primary object of the photograph[s], and the circumstances under which these photographs were taken." *Oliver*, 293 S.W.3d at 445. Accordingly, the State presented sufficient evidence from which the trier of fact reasonably could have found that the possession convictions Mr. Liberty challenges were based on images that depict "sexual conduct," as set forth in section 573.010(17).

## III. DOUBLE JEOPARDY CLAIM

Mr. Liberty next argues that the trial court erred in entering eight separate convictions for possession of child pornography because, he claims, doing so resulted in multiple punishments for the same offense in violation of his constitutional right to be free from double jeopardy.

### A. Standard of Review

Mr. Liberty admits that he failed to raise his double jeopardy arguments to the trial court, but he asks for plain error review. "[T]he rule is clearly established that in order to preserve a constitutional issue for appellate review, it must be raised at the earliest time consistent with good pleading and orderly procedure and must be kept alive during the course of the proceedings." *State v. Wickizer*, 583 S.W.2d 519, 523 (Mo. banc 1979). But because the right to be free from double

jeopardy is a constitutional right that goes "to the very power of the State to bring the defendant into court to answer the charge brought against him," *Blackledge v. Perry*, 417 U.S. 21, 30, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), a double jeopardy allegation determinable "from the face of the record is entitled to plain error review on appeal." *State v. Neher*, 213 S.W.3d 44, 48 (Mo. banc 2007); *see also State v. McTush*, 827 S.W.2d 184 (Mo. banc 1992). "Under plain error review, the defendant must prove the error so substantially affected his rights that 'manifest injustice or miscarriage of justice has resulted therefrom.'" *State v. Couts*, 133 S.W.3d 52, 54 (Mo. banc 2004), *quoting Rule 30.20.*

### B. Guiding Principles of Double Jeopardy

"The United States Supreme Court has determined that the federal double jeopardy clause protects defendants not only from successive prosecutions for the same offense after either an acquittal or a conviction, but also from multiple punishments for the same offense." *McTush*, 827 S.W.2d at 186. Typically, to determine whether multiple charges constitute the same offense, courts consider "whether each offense necessitates proof of a fact which the other does not." *State v. Charles*, 612 S.W.2d 778, 781 (Mo. banc 1981), *citing Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).[12] But when a defendant's conduct is continuous, involves more than one item or involves more than one victim, the test more appropriately is focused on the conduct the legislature intended to proscribe under the statute. *See Horsey v. State*, 747 S.W.2d 748, 751 (Mo.App.1988). "Double jeopardy analysis regarding multiple punishments is, therefore, limited to

---

**12.** Missouri's double jeopardy protections are coextensive with federal protections. *State v.*

*Aguilar*, 478 S.W.2d 351, 354 (Mo. banc 1972).

determining whether cumulative punishments were intended by the legislature." *McTush*, 827 S.W.2d at 186.

■■■■■ "To determine whether the legislature intended multiple punishments, a court looks first to the 'unit of prosecution' allowed by the statutes under which the defendant was charged." *State v. Sanchez*, 186 S.W.3d 260, 267 (Mo. banc 2006).[13] If a charging statute does not express unambiguously the permissible "unit of prosecution," the rule of lenity resolves doubts about the intended unit in favor of the defendant and dictates that a single criminal transaction should not result in charges for multiple offenses. *See Bell v. United States*, 349 U.S. 81, 83–84, 75 S.Ct. 620, 99 L.Ed. 905 (1955). But "[t]he rule of lenity applies to interpretation of statutes only if, after seizing everything from which aid can be derived, [the court] can make no more than a guess as to what the legislature intended." *Fainter v. State*, 174 S.W.3d 718, 721 (Mo.App. 2005), citing *United States v. Wells*, 519 U.S. 482, 499, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997).

*C. Section 573.037 is Ambiguous as to the Unit of Prosecution*

As noted above, when Mr. Liberty was charged under section 573.037, the statute provided:

1. A person commits the crime of possession of child pornography if, knowing of its content and character, such person possesses *any obscene material* that has a child as one of its participants or portrays what appears to be a child as an observer or participant of sexual conduct.

2. Possession of child pornography is a class D felony unless the person has pleaded guilty to or has been found guilty of an offense under this section, in which case it is a class C felony.

§ *573.037* (emphasis added). The question here is whether the legislature unambiguously expressed an intent in section 573.037 to impose separate punishments for *each item* of child pornography a person possesses or whether the statute is ambiguous as to whether it instead intended only a single crime to be charged for each possession of such material. That is, was it the legislature's intent to make the unit of prosecution "possession" in stating "[a] person commits the crime of possession of child pornography if ... such person possesses any obscene material," or

---

**13.** In *Horsey v. State*, 747 S.W.2d 748 (Mo. App.1988), the court highlighted that the "unit of prosecution" test yielded the following examples of conduct held to constitute *one* "unit of prosecution":

> The simultaneous transportation of two women in interstate commerce for the purpose of prostitution. *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). The simultaneous transportation of a group of States, *Cabbell v. United States*, 636 F.2d 246 (8th Cir.1980). The fraudulent issuance in one transaction of three identical stock certificates. *State v. Toombs* [326 Mo. 981, 34 S.W.2d 61 (1930)].
> *Id.* at 751.

By contrast, *Horsey* noted the following examples of acts that were found *each* to constitute an allowable "unit of prosecution:"

Promoting prostitution at two locations at the same time. *State v. Lulkowski* [721 S.W.2d 35, 37 (Mo.App.1986)]. Consecutive opening of each of seven mailbags. *Ebeling v. Morgan* [237 U.S. 625, 629, 35 S.Ct. 710, 59 L.Ed. 1151 (1915)]. The theft from one vault at one time of money belonging to six different banks. *United States v. Marzano* [537 F.2d 257, 272 (7th Cir.1976)]. The simultaneous possession of a sawed-off gun and a silencer attached to that gun. *United States v. Nichols*, 731 F.2d 545 (8th Cir.1984). The almost simultaneous distribution of two different drugs. *State v. Gordon*, 536 S.W.2d 811 (Mo.App. 1976).... The simultaneous possession of heroin and marijuana. *State v. Williams*, 542 S.W.2d 3 (Mo.App.1976).
*Id.*

was it the legislature's intent to make each separate photograph found in the defendant's possession a separate offense, without a showing that the photographs came into the defendant's possession at different times or were possessed on different occasions?

The United States Supreme Court's decision in *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), provides the rule of analysis. *Bell* concerned whether a defendant could be convicted under the Mann Act of two counts of transportation across state lines for the purposes of prostitution where he transported two women in a single car. *Id.* at 81–82, 75 S.Ct. 620. The Court said the key statutory language imposed imprisonment or a fine on: "Whoever knowingly transports in interstate or foreign commerce ... any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose." *Id.* at 82, 75 S.Ct. 620.

The question in *Bell*, as here, was the meaning of the word "any" as used in the statute and whether its use expressed congressional intent to make the unit of prosecution each woman transported or each transport of any—that is, one or more—women. *Bell* recognized that this was a decision for Congress to make and that Congress certainly could impose a punishment for each woman transported. *Id.* at 82–83, 75 S.Ct. 620.

But the Supreme Court stated, while either interpretation might be reasonable,

"About only one aspect of the problem can one be dogmatic. When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution...." *Id.* at 83, 75 S.Ct. 620. In other words, Congress could have stated clearly whether it intended a single or multiple prosecutions in this situation, but, by using the word "any," it failed to do so.

Like *Bell*, numerous other courts interpreting criminal statutes also hold that "the word 'any' has typically been found ambiguous in connection with the allowable unit of prosecution." *United States v. Kinsley*, 518 F.2d 665, 668 (8th Cir.1975). *See also United States v. Coiro*, 922 F.2d 1008, 1014 (2d Cir.1991) (citing numerous cases in which courts have found the term "any" to be ambiguous).[14]

Applying these principles here, the proscription in section 573.037 against possession of "*any* obscene material" is ambiguous, for it reasonably could be interpreted to permit either a single prosecution or multiple prosecutions for a single incidence of possession of eight still photographs of child pornography. "If statutory language is subject to more than one reasonable interpretation, then the statute is ambiguous." *State v. Graham*, 204 S.W.3d 655, 656 (Mo. banc 2006). When:

> Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or

---

14. *Accord, United States v. Polouizzi*, 564 F.3d 142, 155 (2d Cir.2009) (only a single unit of prosecution is permitted under a child pornography law using the term "any"); *United States v. Buchanan*, 485 F.3d 274, 282 (5th Cir.2007) (the phrase "any visual depiction" of a minor was ambiguous and, therefore, permitted only a single prosecution); *People v. McSwain*, 358 Ill.Dec. 152, 964 N.E.2d 1174, 1187 (Ill.App.Ct.2012) ("*any* film, vid-

eotape, photograph or other similar visual reproduction or depiction" held to be ambiguous, because "the term 'any' used in the child-pornography statute could be singular or plural") (emphasis in original); *People v. Manfredi*, 169 Cal.App.4th 622, 86 Cal. Rptr.3d 810, 820 (2008) (use of the word "any" in a statute rendered it unclear in that it did "not unambiguously describe the unit of possession in singular terms").

for want of sympathy with the purpose of Congress in proscribing evil or anti-social conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment.

*Bell,* 349 U.S. at 83, 75 S.Ct. 620. That is, when the legislature has been ambiguous, it "means that ... doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes." *Id.* at 84, 75 S.Ct. 620.[15] But before finally deciding that a statute is ambiguous, a court is permitted to apply rules of statutory construction, for the rule of lenity "in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read." *Id.* at 83, 75 S.Ct. 620.[16] Like other courts, this Court will use relevant rules of construction to determine whether the otherwise ambiguous term "any" can be clarified as to whether, in context, the legislature did or did not intend to allow multiple punishments. *See, e.g., Sanchez,* 186 S.W.3d at 267; *Fainter,* 174 S.W.3d at 721, *citing Wells,* 519 U.S. at 499, 117 S.Ct. 921. *See also Util. Serv. Co., Inc. v. Dep't of Labor and Indus. Relations,* 331 S.W.3d 654, 658 (Mo. banc 2011) ("Rules of statutory construction may be applied to resolve any ambiguities if the legislative intent is undeterminable from the plain meaning of the statutory language.").

*D. Rules of Construction Do Not Resolve the Ambiguity*

Courts that have addressed the issue presented here have used a number of

---

**15.** To this extent, the Court rejects the implication of the dissent's statement that this Court should infer an intent to allow multiple convictions because, where "a statute has 'an expressed or obvious intent to establish substantial punishment for an offense,' the court's construction of the statute favors punishing each act in contravention of the statute," citing *State v. Good,* 851 S.W.2d 1, 4–5 (Mo.App.1992). Citation to *Good,* which in turn cites *Horsey,* 747 S.W.2d at 751—both of which rely on *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958)—s inapt, because those cases misapplied *Gore. Gore* reaffirmed *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955), that only a single offense can be charged in the face of ambiguity. *Gore,* 357 U.S. at 391, 78 S.Ct. 1280.

The language quoted by the dissent emanates from a portion of *Gore* stating that where Congress has expressed its intent to harshly punish an act by making the same conduct a violation of more than one statute, it does not violate double jeopardy to convict a defendant under each statute. *Id.* at 391–92, 78 S.Ct. 1280. Here, of course, the issue is multiple convictions under a single statute for the same conduct, not whether the same conduct can violate more than one statute.

The dissent's quotation, therefore, begs the question of whether the legislature clearly expressed its intent. One cannot infer intent from the belief that the legislature must want to punish wrongdoers harshly and multiple convictions are harsher punishment than a single conviction; that is exactly what the rule of lenity prohibits.

**16.** In referring to "common sense," the Supreme Court was not stating that this Court is permitted to impose its own view as to how a statute most sensibly would be written to accomplish the legislature's goal but rather was suggesting that, in trying to interpret what *the legislature meant,* "The principle of common sense which now governs in the construction of words requires that courts shall understand them as other people would." *Kirk v. Ebenhoch,* 354 Mo. 762, 191 S.W.2d 643, 645 (1946). Even if "common sense" would indicate that a harsher punishment may provide greater deterrence, as the State suggests, once it is determined that the statute is ambiguous, this Court has no discretion to resolve the ambiguity in favor of the harsher of two possible interpretations; rather, the rule of lenity intervenes to require that the more lenient interpretation govern if no rule of construction resolves the ambiguity.

tools of statutory construction to resolve the ambiguity inherent in the word "any" in statutes similar to section 573.037, including reliance on other provisions in the applicable statute or consideration of later amendments that aid in clarifying the legislature's intent. Unfortunately, those rules of statutory construction are not helpful here.

Some courts have suggested that multiple convictions may be appropriate when the evidence establishes that the proscribed items were acquired or possessed at different times. In *State v. Pickett*, 211 S.W.3d 696, 706 (Tenn.2007), the court held that a statute using the word "any" did not permit multiple convictions, but noted that the state had not attempted "to distinguish the offenses by showing that the crimes were separated by time or location." *Accord, United States v. Polouizzi*, 564 F.3d 142, 155 n. 5 (2d Cir.2009) (rejecting multiple convictions, but stating that the court did not decide whether the pertinent statute supported multiple possession convictions if the government had proven that the defendant acquired possession of the prohibited material on different occasions).

The Eighth Circuit noted in *United States v. Hinkeldey*, 626 F.3d 1010 (8th Cir.2010), that this reasoning provided alternative grounds for permitting multiple convictions in that case, as the defendant there admitted "after his arrest that he searched for and viewed child pornography on different occasions," and the admission "was substantiated by evidence indicating that illegal files" were acquired at different times. *Id.* at 1014.

Had the State presented evidence here that Mr. Liberty came into possession of the pornographic photographs on different dates or from different sources, it might have fit within this exception. But because the court and all parties believed erroneously that multiple prosecutions were permitted for a single possession of multiple pictures, the only evidence here was that Mr. Liberty possessed these eight photographs on the day they were discovered.

Other courts have found that the legislature had clarified the meaning of "any" as used in the particular statute in question because "[t]he singular formulation of [the] items covered under the statute modified by the term 'any' [was] evidence that the legislature intended prosecution for each photograph or pictorial reproduction." *State v. Multaler*, 252 Wis.2d 54, 643 N.W.2d 437, 451 (2002) (citing precedent to that effect in Wisconsin case law and permitting multiple prosecutions because the statute at issue proscribed possession of only singular items—"any undeveloped film, photographic negative, photograph, motion picture, videotape or other pictorial reproduction or audio recording").

By contrast, section 573.037 prohibits possession of "any obscene material," where "material" is defined in section 573.010 as both singular and plural items. *See* § 573.010(9) (defining "material," among other things, as "anything printed or written, or any picture, drawing, photograph, motion picture film, videotape or videotape production," but also as "undeveloped photographs, molds, printing plates, stored computer data and other latent representational objects"). Even were this not so, section 1.030 expressly states that, in Missouri's statutes, plural terms include the singular and vice versa.

▮ Finally, while the legislature could have chosen to utilize language that would make each exploited minor a discrete unit of prosecution, it did not do so in enacting section 573.037. The legislature did not enact, for example, a statute imposing a penalty for "each child" depict-

ed in the prohibited items, nor did it otherwise express its intent to protect minors by making each instance of victimization a discrete unit of prosecution. Rather, it focused on making criminal possession of any photographs, not on how many children were depicted in the photographs. *See also Girard v. State,* 883 So.2d 717, 723 (Ala.2003) (holding that the proper unit of prosecution for the offense of *possessing* "any obscene material" under Alabama's child pornography statute "is the possession of the obscene matter, regardless of how many items are actually possessed"). As other courts have stated, "While we agree with the State that each photograph exploits the minor and adds to the market, it is for the legislature to define what it desires to make the allowable unit of prosecution." *McSwain,* 358 Ill.Dec. 152, 964 N.E.2d at 1189 (quotation and alterations omitted). The legislature has not made the number of children victimized the basis of separate units of prosecution in section 573.037.

Beyond relying on the inapplicable rules of construction outlined above, however, the State offers no other rule of construction or statutory language to support its claim that "any" is not ambiguous as used in section 573.037. Instead, it simply cites two previous Missouri cases and argues that the facts of this case are more like those in *State v. Williams,* 542 S.W.2d 3 (Mo.App.1976), in which multiple drug prosecutions were allowed, than they are

like the facts in *State v. Baker,* 850 S.W.2d 944 (Mo.App.1993), in which multiple prosecutions for knife possession were not. It analogizes to the wrong precedent, however.

In *Williams,* the court held that a defendant's multiple convictions were permissible, even though the statute under which he was charged prohibited possession of "any" controlled substance because the defendant had been convicted of possessing two *different types* of drugs—heroin and marijuana, two clearly distinct offenses. 542 S.W.2d at 5.[17] By contrast, *Baker* found that an inmate convicted of possessing four knives had a valid double jeopardy claim after he was charged with four counts of weapons possession under a statute that prohibited possession of "any" knives. 850 S.W.2d at 947–48. *Baker* explained that multiple convictions were improper because the charges involved possession of the *same type* of weapons— knives. *Id.* at 948–49.

The State argues that, similarly to *Williams,* the evidence used to prove the elements for each of Mr. Liberty's possession counts was not identical, as each necessitated introduction of a different image, whereas, it says, the convictions in *Baker* did not. But the prosecution for multiple knives in *Baker* also required introduction of a different knife for each charge, and because of the failure to show their possession at different times, the

---

**17.** *United States v. Hinkeldey,* 626 F.3d 1010 (8th Cir.2010), is in accord that the word "any" is ambiguous, stating, in reviewing for plain error, that the applicable statute's use of the word " 'any' does not obviously suggest a single unit of prosecution." *Id.* at 1014. Equally importantly, while the defendant in *Hinkeldey* was found to have possession of 1,500 pornographic images and videos, this was not charged as or found to permit prosecution of 1,500 counts, as would have been comparable to what the State attempted to do

here. Rather, the Eighth Circuit affirmed that the defendant properly could be prosecuted for *six* counts of possession of child pornography rather than a single count because the images were found on six separate drives, disks and media. *Id.* at 1011–12. In other words, *Hinkeldey* followed other cases that had permitted multiple prosecutions in which pornography was stored on "different media," "different devices" or "multiple disks." *Id.* at 1013.

multiple convictions were reversed. Here, as in *Baker*, there was no showing of *different types* of offenses or media, as was the case in *Hinkeldey*, 626 F.3d at 1013, such as still and motion picture photographs. Instead, just as in *Baker*, Mr. Liberty's multiple convictions were based on possession of the *same type* of item—still images.

 The only tool of statutory construction that *does* aid in resolving the ambiguity in section 573.037 militates in favor of finding that only a single prosecution is permissible under that statute. This Court has stated:

> [I]n determining the meaning of a particular statute, resort may be had to the established policy of the legislature as disclosed by a general course of legislation. With this purpose in view it is proper to consider, not only acts passed at the same session of the legislature, but also acts passed at prior legislative sessions and, likewise acts passed at subsequent legislative session[s].

*State ex rel. Jackson Cnty. v. Spradling*, 522 S.W.2d 788, 791 (Mo. banc 1975) (quotation and alteration omitted). Moreover, "The legislature is not presumed to have intended a useless act, *Kilbane v. Director of the Department of Revenue*, 544 S.W.2d 9, 11 (Mo. banc 1976), and the legislature's action of repeal and enactment is presumed to have some substantive effect such that it will not be found to be a meaningless act of housekeeping." *City of Willow Springs v. Missouri State Librarian*, 596 S.W.2d 441 (Mo. banc 1980).

As the State acknowledges, the legislature amended section 573.037 in 2008. The amendment provided the following:

1. A person commits the crime of possession of child pornography if, knowing of its content and character, such person possesses any ~~obscene material that has a child as one of its participants or por~~trays what appears to be a child as an ~~observer or participant of sexual conduct~~ child pornography of a minor under the age of eighteen or obscene material portraying what appears to be a minor under the age of eighteen.

2. Possession of child pornography is a class ~~D~~ C felony unless the person possesses more than twenty still images of child pornography, possesses one motion picture, film, videotape, videotape production, or other moving image of child pornography, or has pleaded guilty to or has been found guilty of an offense under this section, in which case it is a class ~~C~~ B felony.

*L.2008, S.B. Nos. 714, 933, 899 & 758, sec. A, eff. June 30, 2008* (deletions as indicated and new language underlined).

Unlike the prior version of section 573.037 under which Mr. Liberty was convicted, the 2008 amendment clearly evidences the legislature's intent as to the unit of prosecution. Specifically, with the 2008 amendment, the legislature made clear that possession of 20 or more proscribed images constitutes a single unit of prosecution. On this point, the Second Circuit's decision in *Polouizzi* is instructive. In that case, the defendant challenged his multiple convictions for simultaneous possession of multiple items proscribed under 18 U.S.C. § 2252, which made it a crime to knowingly possess:

1 or more books, magazines, periodicals, films, video tapes, or other matter which contain *any visual depiction* ... if—(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct.

564 F.3d at 154, *quoting 18 U.S.C. § 2252(a)(4)(B)* (alteration in original) (emphasis added). Though the govern-

ment had argued that each "matter" that contained any prohibited visual depiction was a separate unit of prosecution, the court disagreed, holding that the modifier "1 or more":

> indicates that a person commits one violation of the statute by possessing more than one matter containing a visual depiction of child pornography. Thus, unlike the word "any," which "has typically been found ambiguous in connection with the allowable unit of prosecution, for it contemplates the plural,. rather than specifying the singular," the phrase "1 or more" specifies the plural.

*Id.* at 155, *quoting Coiro,* 922 F.2d at 1014 (internal quotation omitted). Accordingly, the court found that the statute did not permit multiple convictions for simultaneous possession of multiple proscribed items. *Id.* at 156.

▇▇▇ Similarly here, the amendment stating that possession of 20 still images constitutes a class B felony demonstrates that only a single prosecution for such possession is permissible; this interpretation is made certain by the statute's explicit statement that possession of only a single motion picture is a felony. To suggest that multiple prosecutions are permissible for possession of fewer than 20 photographs but only a single prosecution is permissible for more than 20 defies any reasonable interpretation of the statute. That construction would produce the unreasonable result that a defendant could receive a harsher punishment for possessing fewer images. Because "words contained in [a] statute or ordinance ... should be interpreted to avoid absurd results," *McCollum v. Dir. of Revenue,* 906 S.W.2d 368, 369 (Mo. banc 1995), the amendment can only be read to evidence the legislature's intent to permit only a single conviction for a defendant in Mr. Liberty's position.

In sum, section 573.037 remains ambiguous even after this Court's application of various rules of construction. Where, as here, rules of statutory construction do not allow a court to find that a statute unambiguously permits multiple prosecutions, the United States Supreme Court has made clear in *Bell,* 349 U.S. at 83, 75 S.Ct. 620, that the rule of lenity *must* be applied and the statute *must* be interpreted favorably for the defendant.

## IV. DOUBLE JEOPARDY DOES NOT BAR RETRIAL

▇▇▇ Having determined that rules of statutory construction do not allow this Court to find that section 573.037 unambiguously permits multiple prosecutions for simultaneous possession of child pornography, the rule of lenity requires that this Court reverse seven of Mr. Liberty's convictions for possession of child pornography. This Court rejects his argument, however, that double jeopardy principles preclude his retrial on these charges.

▇▇▇ Under the federal and Missouri constitutions, whether a defendant may be retried after a reviewing court reverses his conviction depends on the reason for reversal. "[I]f a conviction is reversed solely due to evidentiary insufficiency the double jeopardy clause requires judgment of acquittal." *State v. Wood,* 596 S.W.2d 394, 398 (Mo. banc 1980), *citing Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). By contrast, "if a conviction is reversed solely due to trial error, then retrial is constitutionally permissible." *Id.* This distinction is grounded on the fact that:

> [R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or inno-

cence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.*, incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.

*Burks*, 437 U.S. at 15, 98 S.Ct. 2141. "The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble." *Id.* at 16, 98 S.Ct. 2141.

Mr. Liberty's claim properly is characterized as a claim of trial error rather than one of insufficiency of the evidence. On this point, *United States v. Weems*, 49 F.3d 528 (9th Cir.1995), is instructive. In *Weems*, the defendant had been convicted of violating federal law by structuring financial transactions in an unlawful manner in order to avoid certain reporting requirements. *Id.* at 529. Though Ninth Circuit precedent at the time of the conviction had not required evidence that the defendant knew the structuring was illegal, a subsequent United States Supreme Court decision held that the government must prove such knowledge as an element of the crime. *Id.* at 529–31.

When the defendant appealed his conviction after the Supreme Court's decision, both the government and the defendant conceded that the court was required to reverse the defendant's conviction, as the government had not introduced any evi-

dence as to the defendant's knowledge. *Id.* at 529. The defendant argued double jeopardy principles barred retrial because the government had not introduced sufficient evidence under the rule announced in the Supreme Court's opinion, issued after his conviction. *Id.* at 530.

In rejecting the defendant's argument and finding retrial permissible, the Ninth Circuit explained that "the 'core' of the Double Jeopardy Clause's prohibition on multiple prosecutions is denying the prosecution a second opportunity 'to supply evidence which it failed to muster in the first proceeding.'" *Id.* at 531, *quoting Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

But remanding *Weems* for retrial would "not give the government the opportunity to supply evidence it 'failed' to muster at the first trial," as the "government had no reason to introduce such evidence because, at the time of trial, ... the government was not required to prove that a defendant knew that structuring was illegal." *Id.*

*Weems* said this situation was analogous "to the situation presented when a reviewing court finds that evidence supporting a conviction has been erroneously admitted at trial, and the remaining evidence is insufficient to support a conviction. The Supreme Court has held that remand is appropriate in these situations," *id., citing Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988), because "it is presumed that the government would have attempted to offer other evidence had the challenged evidence been properly excluded in the trial court." *Id.* Similarly, the court stated, permitting retrial after a change in the law would "merely permit[ ] the government to prove its case in accordance with the recent change." *Id.*[18]

18. Numerous cases are in accord with *Weems*. *See, e.g., Linam v. Griffin*, 685 F.2d 369, 373 (10th Cir.1982) (finding trial error where the standard under which the defen-

Likewise, Mr. Liberty correctly asserts that the trial court misapplied section 537.037. But because the prior precedents from the court of appeals did not give clear guidance as to the meaning of the statute, and because this matter was not raised or preserved below, the State was unaware that conviction on the additional seven counts would require it to present such evidence as it may have possessed as to the timing of acquisition or the sources of the pornographic photographs in Mr. Liberty's possession. For these reasons, while the lack of evidence in the record to support eight convictions for possession of child pornography entitles Mr. Liberty to plain error relief, it does not entitle him to discharge from the charges for those offenses.

## V. CONCLUSION

Mr. Liberty's conviction for promoting child pornography is affirmed because, as explained, the evidence underlying that charge was sufficient to support his conviction.

The evidence was also sufficient to establish that Mr. Liberty's convictions for possession of child pornography were based on images depicting "sexual conduct" as required by section 573.037. But because the legislature did not unambiguously express an intent in section 573.037 to permit multiple prosecutions for simultaneous possession of multiple images of child pornography, and because the ambiguity in that provision cannot be resolved in favor of multiple prosecutions by resort to rules of statutory construction, this Court must apply the rule of lenity, interpret the ambiguity in Mr. Liberty's favor and reverse seven of his convictions under that statute. This result is necessitated "not out of any sentimental consideration, or for want of sympathy with the purpose of [the legislature] in proscribing evil or anti-social conduct," but rather because, where the legislature "does not fix the punishment for [an] ... offense clearly and without ambiguity, doubt will be resolved against turning a single [offense] into multiple offenses." *Bell*, 349 U.S. at 83, 84, 75 S.Ct. 620.

Reversing these convictions, however, does not preclude the State from retrying Mr. Liberty, as reversal for trial error does not implicate double jeopardy concerns. Reversal here has been necessitated by the erroneous application of section 573.037, not because the State, although aware that it needed to prove separate instances of possession, failed to meet this burden. Accordingly, the proper remedy is to affirm Mr. Liberty's conviction on one count and remand to the trial court, at which point the State will determine whether to proceed on the remaining seven counts should it believe it has evidence demonstrating separate offenses, as, for example, possession of the photographs by Mr. Liberty at different times or from different sources.

For these reasons, this Court affirms Mr. Liberty's conviction for promoting child pornography and one of his convictions for possession of child pornography. The Court reverses the remaining convic-

dant was convicted was "unknown" at the time of his conviction and became clear only upon a "new development" after he was sentenced); *United States v. Pearl,* 324 F.3d 1210 (10th Cir.2003) (holding that "the government cannot be held responsible for failing to muster evidence sufficient to satisfy a standard ... which did not exist at the time of trial")

(quotations omitted); *United States v. Wacker,* 72 F.3d 1453, 1465 (10th Cir.1995) (finding trial error where "the legal standard under which the jury was instructed and under which the government presented its proof was incorrect"); *United States v. Green,* 139 F.3d 1002 (4th Cir.1998) (same).

tions for possession of child pornography and remands the case.

TEITELMAN, C.J., BRECKENRIDGE and DRAPER, JJ., concur.

RUSSELL, J., dissents in separate opinion filed.

FISCHER and PRICE, JJ., concur in opinion of RUSSELL, J.

MARY R. RUSSELL, Judge, concurring in part and dissenting in part.

I concur in the part of the majority's opinion that affirms David Liberty's sentence for the class B felony of promoting child pornography in the first degree under section 573.025.1.[1] I agree with the majority that the evidence in Liberty's case was sufficient to show "sexual conduct" as necessary to support Liberty's section 573.025.1 conviction. Further, I agree with the majority that the evidence against Liberty was sufficient to show "sexual conduct" in the images underlying his challenged convictions for the class C felony of possession of child pornography under section 573.037.[2]

I respectfully dissent, however, from that part of the majority's opinion that overturns seven of David Liberty's eight convictions for possession of child pornography. Unlike the majority, I do not believe that Liberty's rights under the double jeopardy clause of the Fifth Amendment were violated by his multiple possession convictions. I would hold that his multiple possession convictions were

permissible under section 573.037, and I would affirm the trial court's judgment in its entirety.

## I. Double Jeopardy and Possession of Multiple Pornographic Images

### A. The Standards of Review Focus on Honoring Legislative Intent

As the majority notes, in reviewing Liberty's double jeopardy claims, this Court's consideration of what conduct the legislature intended to proscribe under section 573.037 ensures that the double jeopardy protections against cumulative punishments confine the trial court's sentencing discretion to the limits established by the legislature. *See State v. McTush*, 827 S.W.2d 184, 186 (Mo. banc 1992). An appellate court weighing a double jeopardy challenge looks first to the "unit of prosecution" allowed by the statute to determine if the legislature *intended* to permit cumulative punishments. *See State v. Sanchez*, 186 S.W.3d 260, 267 (Mo. banc 2006); *see also McTush*, 827 S.W.2d at 186.

The majority correctly notes that, if a charging statute does not express a limit to the unit of prosecution, the rule of lenity resolves doubts about the intended unit in favor of the defendant. *See Bell v. United States*, 349 U.S. 81, 83–84, 75 S.Ct. 620, 99 L.Ed. 905 (1955). But it also importantly highlights that the rule of lenity should be applied only when the court "can make no more than a guess as to what the legislature intended."[3] *Fainter v. State*, 174

---

1. All references to section 573.025 are to RSMo 2000, unless otherwise indicated.

2. All references to section 573.037 are to RSMo Supp.2007, unless otherwise indicated.

3. Similarly, in discussing application of the rule of lenity in *De'Armond v. Commonwealth*, the Virginia appellate court discussed:

'Absent ambiguity, the rule of lenity is not applicable to guide statutory interpretation.' *United States v. Johnson* [529 U.S. 53, 59, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000)].... 'The simple existence of some statutory ambiguity,' moreover, 'is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree.' *Muscarello v. United States* [524 U.S. 125,

S.W.3d 718, 721 (Mo.App.2005) (citing *United States v. Wells*, 519 U.S. 482, 499, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997)).

Careful application of these standards to give due regard to the legislature's intent is important because "[t]he basic rule of statutory construction is first to seek the intention of the lawmakers and, if possible, to effectuate that intention." *State ex rel. Wright v. Carter*, 319 S.W.2d 596, 599 (Mo. banc 1958). Nothing about the rule of lenity requires the court "to dispense with common sense or disregard an evident statutory purpose." *State v. Myers*, 248 S.W.3d 19, 27 (Mo.App.2008). Where possible, this Court must ascertain legislative intent by giving statutory language its plain and rational meaning. *See State ex rel. Wright*, 319 S.W.2d at 599. Further, the gravamen of the offense at issue is important to the construction of the statute. *Horsey v. State*, 747 S.W.2d 748, 750–52 (Mo.App.1988). As such, even giving due consideration in favor of leniency, when a statute has "an expressed or obvious intent to establish substantial punishment for an offense," the court's construction of the statute favors punishing each act in contravention of the statute. *State v. Good*, 851 S.W.2d 1, 4–5 (Mo.App.1992) (citing *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958)); *see United States v. Hinkeldey*, 626 F.3d 1010, 1014 (8th Cir.2010) (discussing application of a possession statute's use of the word "any" in a case challenging multiple convictions for possession of child pornog-

raphy on double jeopardy grounds and stating that, even assuming "any" was ambiguous, "[t]here is a substantial argument that the court should reject a reading [of a possession of child pornography statute] that would punish an offender in possession of thousands of illicit images in the same manner as an individual in possession of a single image").

## B. Did Section 573.037 Contemplate Multiple Charges?

Unlike the majority, I cannot subscribe to Liberty's arguments that the intended unit of prosecution for section 573.037 is not clear. I find no confusion in the legislature's use of the word "any" that would require this Court to apply the rule of lenity to provide Liberty double jeopardy relief for his multiple convictions for possession of child pornography. Application of the rule of lenity is not necessary unless the legislature's intended unit of prosecution for section 573.037 cannot be deciphered without "more than a guess as to what the legislature intended." *See Fainter*, 174 S.W.3d at 721. In this case, it would "dispense with common sense" and "disregard [the] evident statutory purpose" of section 573.037 to conclude that the statute's unit of prosecution was ambiguous and failed to allow for multiple possession charges against Liberty. *See Myers*, 248 S.W.3d at 27.

The legislature's obvious purpose in enacting statutes criminalizing possession of child pornography is to protect children

138, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998)]. And the 'mere possibility of articulating a narrower construction' does not by itself make the rule of lenity applicable. *Smith v. United States* [508 U.S. 223, 239, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993)]. Nor can the rule be 'invoked by a grammatical possibility' that raises a manifestly 'implausible reading' of the legislative purpose. *Caron v. United States* [524 U.S. 308, 316, 118 S.Ct. 2007, 141 L.Ed.2d 303 (1998)].

Instead, the rule of lenity serves only to resolve genuine, plausible ambiguities and 'does not abrogate the well recognized canon that a statute ... should be read and applied so as to accord with the purpose intended and attain the objects desired if that may be accomplished without doing harm to its language.' *Cartwright v. Commonwealth* [223 Va. 368, 288 S.E.2d 491, 493 (1982)] (citation omitted).

51 Va.App. 26, 654 S.E.2d 317, 321 (2007).

from exploitation. *See State v. Foster*, 838 S.W.2d 60, 64 (Mo.App.1992) ("one of the purposes of the child pornography statutes is to protect children from exploitation"); *New York v. Ferber*, 458 U.S. 747, 756, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) ("The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance."). To the extent that any criminal statute is intended to deter criminal acts, there is no doubt that there is a public policy concern raised if a defendant's possession of multiple images of child pornography featuring real or apparent child-victims is not punished according to each item possessed. Criminal statutes are intended to "encourage crimi-

nals to abandon criminal behavior," and ruling that multiple images give rise to only a single count of possession of child pornography would provide no incentive for a possessor of child pornography to "desist from his criminality" rather than amassing a larger collection of child pornography.[4] *See State v. Barber*, 37 S.W.3d 400, 405 (Mo.App.2001).[5] When, as in this case, the State can prove that a defendant possessed multiple *distinctive* images of child pornography, it would defy common sense to declare that the legislature's intent in enacting section 573.037 was to limit the phrase "any obscene material" to a single criminal charge regardless of the volume of material possessed.[6]

4. *See Fink v. Phelps*, 2010 WL 2104233, at *8 (D.Del. May 25, 2010) (noting that, when multiple possession of child pornography charges are disallowed, "a defendant would have no incentive to stop compiling or possessing images of child pornography after obtaining the first image, because he would expose himself to criminal liability for one count of possession or unlawful dealing no matter how many images he compiled or possessed" and this would disserve the legislative goal of protecting children and limiting their exploitation; considering the context of an entire child pornography statute in determining that multiple charges for possession of child pornography were permissible under a possession statute incorporating the word "any").

5. In *Barber*, the defendant was charged with multiple counts of unlawful use of a weapon under section 571.030.1(4), RSMo 1994, based on his flourishing a weapon multiple times during the course of a domestic altercation. 37 S.W.3d at 402. The court of appeals found that there was no double jeopardy violation based on the defendant's convictions for the multiple counts, reasoning that the legislature intended to allow cumulative punishments under the statute. *Id.* at 403–04. It noted that the statute's aim to prevent the danger of unlawful use of a weapon was impacted each time the danger of being harmed by a weapon was presented. *Id.* at 404.

6. *Cf. State v. Fussell*, 974 So.2d 1223, 1231, 1236–38 (La.2008) (discussing that ambiguity

as to an intended unit of prosecution should be resolved to give effect to legislative intent where possible and noting that the legislative intent of criminalizing possession of child pornography was to prevent sexual exploitation of children; highlighting that the evidence supporting the defendant's multiple convictions for possession of child pornography involved multiple *different* photographs, as the images showed *different* children and *different* sexual performances); *Commonwealth v. Davidson*, 595 Pa. 1, 938 A.2d 198, 215–21 (2007) (rejecting a defendant's contention that he could not be subjected to separate convictions for each piece of child pornography that he possessed; noting the state's argument that the defendant's multiple charges did not violate double jeopardy because they were not based on a single criminal act given that the charges related to "separate and different pornographic images;" discussing that the legislature's intent in the statute was to "target individual instances of possession" because "[e]ach use of a minor to create a visual depiction of child pornography constitutes a separate and distinct abuse of that child" and "each image of child pornography victimized each child and subjected the child to precisely the type of harm the statute [sought] to prevent" (internal quotations omitted); declaring that the defendant was "not entitled to a volume discount"); *State v. Ravell*, 155 N.H. 280, 922 A.2d 685, 687 (2007) (discussing in a case challenging a defendant's multiple possession of child por-

The State's evidence against Liberty proved that each distinctive photograph supporting each of his separate possession counts was of a content and character known to him and was an obscene image with a child or apparent child as a participant or observer of sexual conduct. *See* sec. 573.037. Because each of the counts of possession of child pornography against Liberty was supported by "[s]eparate and distinct facts" related to each unique image underlying each possession count, I would hold that the fact that his multiple possession counts had the same elements does not implicate double jeopardy concerns. *See State v. Lulkowski*, 721 S.W.2d 35, 37–38 (Mo.App.1986) (finding no double jeopardy violation for a defendant's two convictions for promoting prostitution when each count was supported by the defendant's operation of two different houses of prostitution; noting that the evidence was weighed separately for each offense).

## C. Precedent Instructs That Use of "Any" Does Not Mandate a Single Possession Charge

Unlike the majority, I find the analysis in *State v. Williams*, 542 S.W.2d 3 (Mo. App.1976), in which multiple drug prosecutions were allowed, more persuasive than the analysis in *State v. Baker*, 850 S.W.2d 944 (Mo.App.1993), in which multiple prosecutions for knife possession were not allowed.

In *Baker*, the court addressed the unit of prosecution provided by the use of the word "any" in section 217.360.1(4), RSMo 1986, which criminalized an inmate's possession of "[a]ny gun, knife, weapon, or other article or item of personal property that may be used in such manner[.]" 850 S.W.2d at 947. The court held that the defendant in *Baker* was entitled to an evidentiary hearing on his claim that his counsel was ineffective for failing to raise a double jeopardy challenge to his being charged with multiple weapons possession offenses for his simultaneous possession of four knives, rather than a single offense for all the knives collectively. *Id.* at 947–48. Citing a Florida case and federal case law, the court concluded that "any" was ambiguous as to the allowable unit of prosecution. *Id.*

*Baker* distinguished the inmate weapons possession statute at issue in that case from the drug possession statute that was addressed in *Williams*, 542 S.W.2d 3. *See Baker*, 850 S.W.2d at 948. *Williams* had addressed section 195.020, RSMo 1969, which provided it was unlawful for "any person ... to possess ... any controlled or counterfeit substance." *See Williams*, 542 S.W.2d at 5. The defendant in *Williams* had alleged a double jeopardy violation based on his convictions for possession of both heroin and marijuana. *Id.* The court in *Williams* found that there was no double jeopardy violation because use of the word "any" in the drug possession statute at issue was meant to criminalize *each* substance that was possessed as an isolated unlawful act. *Id.; see Baker*, 850 S.W.2d at 948 (discussing *Williams* holding).

*Baker* determined that *Williams* was not persuasive for its interpretation of the inmate weapons possession statute because there were different kinds of drugs (heroin

---

nography convictions that the legislature's use of the phrase "any visual representation of a child engaging in sexual activity" in a statute intended to "prevent the proliferation of child pornography" could not reasonably be read "without regard for the volume of child por-

nography and the number of separate volitional acts required to obtain and store it" (internal quotations omitted); finding that the language allowed a unit of prosecution for "each and every instance").

and marijuana) underlying the charges in *Williams*, whereas *Baker* involved charges of possessing four items of the same kind (four knives). *Baker*, 850 S.W.2d at 948. *Baker* highlighted that the State had to prove different elements for the distinct drugs underlying the charges in *Williams*, but in *Baker* the court considered that "the elements of proof were nearly identical for each count." *Id.* *Baker* also noted that different statutes were involved in the case, and the defendant in *Williams* received a separate trial on each count whereas the defendant in *Baker* was convicted of four counts for knife possession in one proceeding. *Id.*

The majority agrees with Liberty that *Baker* is instructive to his case because, like the defendant in *Baker*, his possession counts involved evidence of the "*same type of item*" and required proof of identical elements. I cannot ignore, however, that each possession count brought against Lib-

erty was supported by a *distinct* image that was presented into evidence. Even if the elements for each of Liberty's counts for possession of child pornography were the same, the State's evidence used to prove the elements for each count was not identical.[7] As such, while only one proceeding was brought against Liberty to address all of his possession charges, *Williams*' analysis is more persuasive to Liberty's case than is *Baker*'s analysis. Possession of distinctive pornographic images is *not* analogous to possession of four knives. Just as the prosecutor in *Williams* was required to present evidence proving the distinct illicit substances underlying each of the defendant's drug possession charges, the prosecutor in Liberty's case was required to provide evidence that each individual photograph underlying each count of possession of child pornography fulfilled the statutory requirements of the crime.[8]

7. In the context of analyzing if a double jeopardy violation occurred when a defendant is charged with different crimes based on conduct arising from the same set of facts, "[a]nalysis of whether the same offense is involved is limited to the statutory *elements* of each offense, *not the evidence adduced at trial*" *State v. Gordon*, 948 S.W.2d 673, 675 (Mo.App.1997) (emphasis added) (noting, in a case in which a defendant was charged with sodomy and incest for the same act, that "[w]hen there may be multiple convictions and therefore multiple punishments for a single act, the inquiry is limited to a determination of whether the legislature specifically authorized cumulative punishment under two statutes proscribing the same conduct"). But this rule is distinguished in the context of a case like Liberty's, where the focus is not on a defendant being charged under two separate statutes but rather being charged with multiple counts under the same statute. If a double jeopardy violation could be shown simply because each count had identical elements, there would be no reason to assess the "unit of prosecution," as each unit necessarily would have the same elements. A double jeopardy analysis focused on considering the

legislature's intended "unit of prosecution" requires the court to examine the elements of the crime as well as the evidence used to prove those elements. *See Horsey*, 747 S.W.2d at 751.

8. To the extent that a distinct photograph was used to support each separate possession count, Liberty's case is distinguishable from past cases in which double jeopardy concerns focused on the State using the *same* evidence to support multiple counts brought against a defendant. *Cf. State v. Cunningham*, 193 S.W.3d 774, 781–83 (Mo.App.2006) (finding as a matter of plain error a double jeopardy violation where the state attempted to bring multiple counts based on a defendant's possession of one "large baggie" that contained 15 individual "baggies" of cocaine; viewing the "large baggie" as a single item of evidence, and rejecting the State's contention that multiple charges could be supported by the smaller "baggies" found within the "large baggie;" finding that there was "nothing to suggest that the legislature intended for multiple punishments for a single act of possessing the *same* controlled substance"); *cf. also State v. Polson*, 145 S.W.3d 881, 890–91, 896–97

In *Foster*, due to deficiencies in the defendant's brief, the court found that it could not explore the double jeopardy concerns presented by the defendant in relation to his being charged with five separate counts of promoting child pornography based on his taking five separate photographs at the same location during a short time period. 838 S.W.2d at 66. But the court did express: "the fact that defendant took five photographs of child pornography at the same location and within a relatively short period of time does not necessarily prevent prosecution, conviction and sentencing for five separate offenses."[9] *Id.* at 67. Similarly, I would find the fact that Liberty simultaneously possessed multiple images of child pornography did not prevent his prosecution for each of the images separately under the terms of section 573.037.

### D. The 2008 Amendment to Section 573.037 Did Not Demonstrate an Intent to Prohibit Multiple Counts of Possession of Child Pornography

Further, in contrast to the majority, I find nothing in the 2008 amendment to section 573.037, which provides that an individual who possesses "more than [20] still images of child pornography" is guilty of a class B felony, that illustrates that the legislature previously did not intend to permit a separate unit of prosecution for possession of multiple items of child pornography. *See* sec. 573.037, RSMo Supp. 2011. I agree with the State's arguments that the 2008 amendment did not relate to the legislature's intended unit of prosecution but rather reflected that the legislature wished to provide an enhanced sentence for a defendant who possessed more than 20 images of child pornography.

"When the Legislature amends a statute, it is presumed that the legislature intended to effect some change in the existing law." *Harding v. Lohman*, 27 S.W.3d 820, 824 (Mo.App.2000). This is because "[t]o amend a statute and accomplish nothing from the amendment would be a meaningless act," and the legislature is presumed not to undertake meaningless acts. *Id.* Here, though, even if the available unit of prosecution under section 573.037 were not impacted by the 2008 amendment, the amendment was not meaningless. In addition to outlining the availability of new felony classes for possession of child pornography in the sentencing provisions of section 573.037.2, the amended version of the statute also criminalized possession of two distinctive types of materials: (1) child pornography, which need not necessarily meet the definition of "obscene" material; and (2) "obscene" ma-

(Mo.App.2004) (finding as a matter of plain error a double jeopardy violation when the State's evidence to support two counts brought against the defendant was the *same* precursor drug for methamphetamine (Actifed found in two locations); noting that the State could not show that "the constructive joint possession, by a single defendant, of multiple quantities of the *same* [precursor chemical to methamphetamine] [was] legally sufficient to sustain [the defendant's] separate convictions" (emphasis added)).

9. *Cf. United States v. Esch*, 832 F.2d 531, 542 (10th Cir.1987) (rejecting a defendant's argument that her indictment was unconstitutionally multiplicitous and her assertion that only one crime occurred where she took multiple sexual photographic images of her two children during one photography session; discussing the allowable "unit of prosecution" at issue when the statute criminalized use of a minor to engage in "any sexually explicit conduct for the purpose of producing any visual depiction of such conduct," and concluding that "each use of a minor to create a visual depiction constitutes a separate and distinct violation;" noting the legislative intent to "protect children from the abuse inherent in the production of sexually explicit materials").

terial that portrays what appears to be a minor under age 18 years. *See* sec. 573.037.1, RSMo Supp.2011.

Considering the statute and its amendment, I cannot find that the amendment had any impact on the appropriate unit of prosecution under the previous version of the statute. The changes made to the available penalty under the revised section 573.037.2 did not alter or modify the legislature's use of the word "any" in section 573.037.1.

The majority declares that the 2008 amendment "clearly evidences the legislature's intent as to the unit of prosecution" and "made clear that possession of 20 or more proscribed images constitutes only a single unit of prosecution." *See* op. at 552. It cites to a federal case interpreting a statute that included the phrase "1 or more" in its statutory language outlining what types of materials and items were proscribed by the statute. *See* op. at 552–53 (citing *United States v. Polouizzi*, 564 F.3d 142, 154 (2nd Cir.2009)). The majority, however, fails to distinguish that the 2008 amendment to section 573.037 added the phrase "20 or more" only in the section 573.037.2 language relating to sentencing. Unlike the "1 or more" phrase interpreted in *Polouizzi* to be an explanation of the available unit of prosecution, the "20 or more" phrase in the 2008 amendment to section 573.037 was not added to modify the word "any" in the section 573.037.1 language outlining what the statute proscribed. *Cf. Hinkeldey*, 626 F.3d at 1014 (refusing to find plain error in a judgment affirming multiple possession convictions; distinguishing *Polouizzi* by noting that the statutory provision at issue in *Hinkeldey* used the term "any" and not the phrase "1 or more;" stating that "[t]he term 'any' does not obviously suggest a single unit of prosecution").

In my view, under both versions of section 573.037, the prosecutor would need to exercise discretion in bringing the appropriate possession of child pornography charges to fit the facts and evidence involved in the case.

Because I would hold that nothing in section 573.037 required the prosecutor to bring one joint count reflecting Liberty's simultaneous possession of multiple, distinctive photographic images of child pornography, I would affirm all of his possession convictions.

## II. Conclusion

For the foregoing reasons, I would affirm the trial court's judgment.